Roger A. Denning (SBN 228998)
denning@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Jeff H. Burton (SBN 328305)
jburton@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: 858-678-5070 / Fax: 858-678-5099

Katherine D. Prescott (SBN 215496)
prescott@fr.com
Jeanel N. Sunga (SBN 333815)
sunga@fr.com
Claire Chang (SBN 341420)
cchang@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: 650-893-5070 / Fax: 650-839-5071

*Additional Counsel listed on Signature Page*

*Attorneys for Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| HAPTIC, INC., | Case No. 3:24-cv-02296-JSC |
| Plaintiff, | **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO COMPEL COMMUNICATIONS AND AGREEMENT(S) WITH THIRD PARTIES ABOUT THE ASSERTED PATENT** |
| v. | |
| APPLE INC. | ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| Defendant. | Date:     May 29, 2025<br>Time:     10:00 a.m.<br>Dept:     Courtroom 8<br>Judge:    Hon. Jacqueline Scott Corley |

**TO THE PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Civil L.R. 7, on May 29, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Jacqueline Scott Corley, Judge of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Apple Inc. requests that the Court order Haptic to produce the documents listed on its privilege log and to produce or log all other relevant documents withheld under the guise of "litigation funding." As set forth in the following Memorandum of Points and Authorities, these withheld materials are relevant to the claims and issues in this case and are not privileged under the work-product doctrine or the common interest privilege.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Joy B. Kete, and supporting documents, on such matters as may be judicially noticed, on any oral argument the Court may hear, and on such other and further information as the Court may consider.

The parties met-and-conferred on the issues presented in this Motion on February 20, 2025. Additionally, the parties submitted a joint discovery dispute statement regarding the present issues on March 25, 2025. Dkt. No. 154. And during the Case Management Conference held April 2, 2025, the Court permitted further briefing on the issues raised in this Motion. In accordance with the Court's instruction and the parties' agreement on a stipulated briefing schedule (Dkt. No. 162), Apple submits this Motion to Compel.

## TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

III. ARGUMENT ..................................................................................................... 4

   A.  The Court Should Order Haptic to Produce The Documents
       Identified In Its Privilege Log, Which Are Relevant and Not
       Privileged ................................................................................................. 4

       1.  Documents Related to Valuations and Evaluations of the
           Asserted Patent Are Relevant ....................................................... 4

       2.  Haptic Has Not Met Its Burden of Showing That the
           Withheld Documents Are Privileged ............................................ 7

           a.  The Documents Listed on Haptic's Privilege Log
               Are Not Work Product ........................................................ 7

           b.  Haptic's Voluntary Decision to Share Its
               Information With Adverse Third Parties Waived
               Any Possible Protection ..................................................... 12

   B.  The Court Should Order Haptic to Produce or Log Any
       Additional Relevant Information It Has Withheld As Purportedly
       Relating to "Litigation Funding" .......................................................... 16

       1.  Haptic Is Undoubtedly In Possession of Relevant
           Documents That it Has Not Logged ............................................. 16

           a.  Haptic's Privilege Log Omits Documents in Its
               Possession Relating to Value of the Asserted
               Patent, Such as the Funding Agreement Itself ................... 17

           b.  Documents Necessary to Counter a "David v.
               Goliath" Story Are Relevant to Trial Themes ................... 17

           c.  Prior Statements Made by Haptic's Corporate
               Representative Are Relevant, Including to Witness
               Credibility .......................................................................... 18

           d.  Haptic's Agreement(s) with Litigation Funders,
               and Related Documents, are Relevant to Standing ........... 19

       2.  Apple Has a Right to Test the Privilege Claim for
           Additional Discovery, But Haptic Did Not Log It ...................... 20

IV. CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

1

**Page(s)**

2

**Cases**

3

*Acceleration Bay LLC v. Activision Blizzard, Inc.,*
   2018 WL 798731 (D. Del. Feb. 9, 2018) ...................................................... 6, 10, 11

4

5

*AIPI, LLC v. Netflix, Inc.,* No. 1:24-mc-2 (LMB/WEF),
   Dkt. No. 96 (E.D. V.A. Apr. 18, 2025) ........................................................... 21

6

7

*Becker v. Willamette Cmty. Bank,*
   2014 WL 2949334 (D. Or. June 30, 2014) ...................................................... 9

8

*Binks Mfg. Co. v. National Presto Indus., Inc.,*
   709 F.2d 1109 (7th Cir. 1983).......................................................................... 9

9

10

*In re Cal. Pub. Utils. Comm'n,*
   892 F.2 778, 781 (9th Cir. 1989)...................................................................... 10

11

12

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.,*
   2013 WL 11311345 (S.D. Fla. Nov. 4, 2013)................................................. 6, 21

13

*Cont'l Cirs. LLC v. Intel Corp.,*
   435 F. Supp. 3d 1014 (D. Ariz. 2020)............................................................. 18

14

15

*Corning Inc. v. SRU Biosystems, LLC,*
   223 F.R.D. 189 (D. Del. 2004) ........................................................................ 13

16

17

*Doe v. Benjamin Zaremski M.D., P.C.,*
   2022 WL 2966041 (S.D.N.Y. July 27, 2022) ................................................. 14

18

*Dorf & Stanton Commc'ns. v. Breweries,*
   100 F.3d 919 (Fed. Cir. 1996).......................................................................... 12

19

20

*Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC,*
   2023 WL 4750822 (W.D.N.C. July 24, 2023) ................................................ 20

21

*Finjan, Inc. v. SonicWall, Inc.,*
   2020 WL 4192285 (N.D. Cal. July 21, 2020).................................................. 22

22

23

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.,*
   224 F.R.D. 644 (N.D. Cal. 2004) .................................................................... 5

24

25

*F.T.C. v. Boehringer Ingelheim Pharms.,* Inc.,
   778 F.3d 142 (D.C. Cir. 2015) ........................................................................ 8, 23

26

*In re Google Litig.,*
   2011 WL 6113000 (N.D. Cal. Dec. 7, 2011) .................................................. 7

27

28

*Haptic Inc. v. Apple Inc.*,
    No. 4:25-mc-0331, Dkt. No. 1 ..................................................................................... 2, 12, 19

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ....................................................................................................... 8

*Impact Engine, Inc. v. Google LLC*,
    2020 U.S. Dist. LEXIS 145636 (S.D. Cal. Aug. 12, 2020) ............................................. 6, 17

*Impact Engine, Inc. v. Google LLC*,
    2020 WL 2745230 (S.D. Cal. May 26, 2020) ................................................................... 5

*Intel Corp. v. Protection Cap. LLC*,
    2013 WL 12313348 (S.D. Cal. Oct. 2, 2013) ................................................. 6, 7, 17, 18, 21

*Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*,
    2011 WL 2181692 (N.D. Cal. June 2, 2011) ................................................................... 8

*Leader Techs., Inc. v. Facebook, Inc.*,
    719 F. Supp. 2d 373 (D. Del. 2010) ............................................................................... 14

*Lexington Luminance LLC v. Feit Elec. Co.*,
    2020 WL 10052404 (C.D. Cal. 2020) ............................................................................ 5

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ..................................................................................... 5

*McMorgan & Co. v. First Cal. Mortg. Co.*,
    931 F. Supp. 699 (N.D. Cal. 1996) ................................................................................ 22

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*,
    2022 WL 187156 (N.D. Cal. May 26, 2022) ................................................................... 14

*Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*,
    2020 WL 5554361 (E.D. Pa. Sept. 16, 2020) ............................................................ 21, 22, 23

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) ..................................................................................... 19

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) .................................................................................. 23

*Nimitz Techs. LLC v. CNET Media, Inc.*,
    2022 WL 17338396 (D. Del. Nov. 30, 2022) .................................................................. 20

*Northwest Airlines, Inc. v. Phillips*,
    2009 WL 10687806 (D. Minn. Jan. 16, 2009) .......................................................... 10, 12

*Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*,
    2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ................................................................ 6, 17

iii

*Phoenix. Sols. Inc. v. Wells Fargo Bank, N.A.*,
    254 F.R.D. 568 (N.D. Cal. 2008) ........................................................ 5, 7

*Prater v. Consol. Rail Corp.*,
    272 F. Supp. 2d 706 (N.D. Ohio 2003) ............................................ 8, 23

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    296 F. Supp. 3d 1230 (D. Or. 2017) ........................................................ 9

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    132 F.R.D. 384 (D.N.J. 1990) ................................................................ 15

*Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*,
    2012 WL 3062294 (N.D. Cal. July 26, 2012) .................................. 12, 15

*S.E.C. v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) .......................................................... 15

*SCM Corp v. Xerox Corp.*,
    70 F.R.D. 508 (D. Conn. 1976) ................................................................ 9

*Shvartser v. Lekser*,
    270 F. Supp. 3d 96 (D.D.C. 2017) ........................................................ 14

*Sia Chue Yang v. Schwarzenegger*,
    2010 WL 11587074 (N.D. Cal. May 12, 2010) .................................. 8, 20

*Sloan v. Oakland Police Dep't*,
    2003 U.S. Dist. LEXIS 29572 (N.D. Cal. 2003) .................................. 18

*Taction Tech., Inc. v. Apple Inc.*,
    2022 WL 18781396 ................................................................................ 17

*Thought, Inc. v. Oracle Corp.*,
    2014 WL 3940294 (N.D. Cal. Aug. 11, 2014) ...................................... 13

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .............................................................................. 19

*U.S. v. Bergonzi*,
    216 F.R.D. 487 (N.D. Cal. Dec. 2003) .................................................. 22

*U.S. v. Martin*,
    278 F.3d 988 (9th Cir. 2002) ................................................................ 22

*U.S. v. Richey*,
    632 F.3d 559 (9th Cir. 2011) ................................................................ 22

*Uniloc USA, Inc. v. Apple, Inc.*,
    2020 WL 7122617 (N.D. Cal. Dec. 4, 2020). .................................. 19, 20

iv

*United States v. Graf,*
   610 F.3d 1148 (9th Cir. 2010) .................................................................. 22

*United States v. Heine,*
   2016 WL 6138245 (D. Or. Oct. 21, 2016) ................................................. 8

*United States v. Lawless,*
   709 F.2d 485 (7th Cir. 1983) .................................................................... 23

*United States v. Ruehle,*
   583 F.3d 600 (9th Cir. 2005) .................................................................... 22

*United States v. Schussel,*
   291 Fed. Appx. 336 (1st Cir. 2008) ......................................................... 23

*United States v. Segines,*
   17 F.3d 847 (6th Cir. 1994) ...................................................................... 18

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981) ............................................................................ 21, 22

*Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.,*
   2025 WL 41936 (N.D. Cal. Jan. 6, 2025) ............................................ 21, 22

*Waymo LLC v. Uber Techs., Inc.,*
   2017 WL 2485382 (N.D. Cal. June 8, 2017) ................................ 7, 9, 12, 13

*Westinghouse Elec. Corp. v. Republic of Philippines,*
   951 F.2d 1414 (3d Cir. 1991) ..................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................... *passim*

Fed. R. Civ. P. 34 ..................................................................................... 2

Fed. R. Civ. P. 45 ..................................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Court recently ordered Haptic to provide a privilege log for documents it is withholding that involve valuations or evaluations of the Asserted Patent.  In response, Haptic provided a 16-entry privilege log confirming exactly what Apple suspected:  Haptic is using the categorical label of "litigation funding" to shield documents that are highly relevant and not privileged.  Contrary to Haptic's claim that anything withheld was irrelevant, Haptic created and shared numerous documents with prospective litigation funders directly responsive to Apple's discovery requests and directly relevant to the issues here.  Haptic has failed to substantiate its claim that these documents are privileged as many of the communications and documents listed on Haptic's privilege log do not involve attorneys and were shared with third parties with whom Haptic shared no common legal interest.  Apple therefore requests that the Court order Haptic to produce these documents, as they fall squarely under relevant discoverable material contemplated by Rule 26 and are not shielded by any privilege.

Apple further requests that the Court order Haptic to produce or provide a privilege log for *all* documents responsive to Apple's requests for production that it has unilaterally withheld as relating to litigation funding.  Haptic's privilege log only covers the two categories of documents (valuations and evaluations of the Asserted Patent) that this Court identified at the recent Case Management Conference—not all of the relevant, non-privileged communications it has had with litigation funders and (potentially) other third parties, and no documents following Haptic's consummation of an agreement with its litigation funder.  Indeed, in its motion to quash Apple's subpoena, Haptic's litigation funder, Siltstone Capital, identified communications not listed on Haptic's privilege log that it apparently received from Haptic.  Given this disparity and given Haptic's previous overbroad privilege claims and questionable relevance arguments, Haptic should be required to produce or properly log all of the withheld documents so that Apple and this Court may assess whether the documents are relevant and privileged.

1    ## II.    BACKGROUND

2          This motion concerns non-privileged documents that Haptic has withheld from discovery

3    and are directly responsive to Apple's discovery requests and directly relevant to issues at play in

4    this case.  First, Apple seeks discovery about the Asserted Patent, including specifically regarding

5    its value, validity, and any alleged infringement.  Ex. A at RFP Nos. 9, 17-19, 22, 24, 28-29, 36,

6    39; Ex. B at ROG No. 9.  Apple's requests include Haptic's communications with third parties,

7    such as potential litigation funders, about the Asserted Patent.  Second, Apple seeks information

8    regarding the extent to which any third party, such as a litigation funder, has an interest in the

9    outcome of or control over the litigation.  Ex. A at RFP Nos. 13-15, 19, 22, 36; Ex. B at ROG 7;

10   Ex. C at Topic Nos. 39-40.  Third, Apple seeks discovery related to Haptic's dealings with

11   Siltstone Capital Litigation Fund, the entity funding this litigation, and two entities with which it is

12   associated.[1]  Ex. A at RFP Nos. 13-15, 19, 22, 36; Ex. B at ROG 7; Ex. C at Topic Nos. 39-40.

13         During a meet and confer on February 20, 2025, Haptic articulated for the first time that it

14   was withholding all documents that it deems related ***in any way*** to litigation funding.  Kete Decl.,

15   ¶ 8.[2]  Specifically, Haptic stated that it would not produce documents that it shared with its

16   litigation funder because they are allegedly categorically irrelevant and privileged.  *Id.*  Haptic also

17   stated that it would not provide a privilege log or otherwise account for these withheld documents.

18   *Id.* ¶ 9.  After several exchanges, the parties filed a Joint Discovery Statement on this issue

19   (Dkt. 156), in which Apple requested permission to file the present motion.

20         The Court addressed the parties' joint discovery motion during a case management

21   conference on April 2, 2025.  During the hearing, the Court questioned Haptic's claim that the

22   documents it withheld were privileged, and rejected Haptic's claim that anything related to

23

24         [1] Apple served subpoenas on LF Haptic, LLC, Siltstone Capital Litigation Fund LP, and
25   Siltstone Capital LLC (collectively, "Siltstone") on February 5, 2025.  On February 24, 2025,
     Siltstone filed a motion to quash Apple's subpoena in the Southern District of Texas (Case No.
26   4:25-mc-0331).  The Southern District of Texas has transferred that proceeding to this Court under
     Fed. R. Civ. P. 45(f).  No. 4:25-mc-0331, Dkt. No. 19 (S.D. Tex. Apr. 10, 2025).
27         [2] Notably, Haptic did not comply with Rule 34's requirement to "state whether any
     responsive materials were being withheld," such as by stating that it was not providing its
28   communications with its litigation funders.  *See* Fed. R. Civ. P. 34(b)(2)(C).

litigation funding was categorically irrelevant.  *See, e.g.,* Ex. D (CMC Tr.) at 10:13–11:16; 14:24–15:10.  In particular, this Court cited its experience on similar issues in a case it adjudicated between Waymo and Uber.  *See id.* at 12:15–22.  The Court also questioned Apple regarding the categories of relevance cited in its portion of the joint statement.  *See id.* at 3:23–5:20 (discussing standing); 7:6–9:18 (discussing damages).  In the end, the Court determined that, because Haptic had not even logged these documents to substantiate its privilege claims, Haptic must serve a privilege log regarding valuations and evaluations of the Asserted Patent—two categories the Court decided may be relevant to this litigation—after which the parties would brief the issues.  *See id.* at 19:19–20:2.  Alternatively, the Court gave Haptic the option of providing documents for this Court's *in camera* review if Haptic really believed they were not relevant to the issues here.  *Id.* at 12:2–10.  Haptic declined *in camera* review.

Haptic served a privilege log on April 9, 2025, listing 16 documents accompanied by vague and opaque descriptions purportedly substantiating Haptic's claims of privilege.  Ex. E (Haptic Priv. Log).  Each of the logged documents purports to be a communication and/or email attachment sent or received by Jake Boshernitzan—Haptic's CEO—to various litigation funders between March 2022 and January 2023.  *Id.*  Not a single logged entry was sent by Haptic's counsel and only four entries include an attorney.  For purposes of this brief, Haptic's privilege log entries can be organized into the following four categories:

| Category No. | Priv Log Entry Nos. | Description |
|---|---|---|
| 1 | 1–5 | Emails and attachments regarding a "report" on the validity of the Asserted Patent purportedly created "at the direction of counsel" |
| 2 | 1, 3, 5, 10 | Emails and attachments discussing Haptic's "estimated legal costs" or discussing the litigation funding process |
| 3 | 6–13 | Emails and attachments containing a "merits analysis" or "legal strategy" purportedly containing the mental impressions of counsel |
| 4 | 14, 15, 16 | Emails and attachments between Haptic and Siltstone Capital containing a "damages analysis" purportedly created by and at the direction of counsel. |

For each of these entries, Haptic claims that the communication and any attachments are protected from discovery under the work product and common interest privileges.  Haptic's privilege log provides no explanation of these privilege claims other than self-serving statements that each of

3

1  these communications and attachments were created "in anticipation for litigation."  *See* Ex. E

2  (Haptic Priv. Log).  There is no description of who created or "directed" Haptic to create these

3  documents relating to validity and damages.  And there is no description about what, if any,

4  "common interest privilege" applies, including no allegation of when the alleged common interest

5  arose and no allegation of whether any common interest agreement is in place.  Notably, in

6  refusing to produce documents in response to Apple's subpoena, Siltstone did not even argue

7  application of a common interest privilege and repeatedly asserted it was a non-party to the

8  litigation.  No. 4:25-mc-0331, Dkt. No. 1 (Siltstone Motion to Quash) at 19–24 (S.D. Tex. Feb. 24,

9  2025) (making only privilege and work product arguments).

10   After receiving Haptic's privilege log, Apple asked Haptic for copies of any non-disclosure

11  or common interest agreements it was relying on to support its privilege claims.  *See* Ex. F at 2.

12  Haptic responded that it was not required to produce those documents, noting instead that "[f]or

13  any documents Haptic relies on its response brief, Apple will have the chance to address them in

14  reply."  Ex. F (Email Corresp. re MTC Briefing Sched.) at 1.  As of the filing of this brief, Haptic

15  has not produced these documents to Apple.

16  ## III. ARGUMENT

17   Relevant, non-privileged information is discoverable.  *See* Fed. R. Civ. P. 26(b)(1).  Contrary

18  to Haptic's urging, the Federal Rules do not carve out a relevance exception for any information just

19  because it was shared with a litigation funder, nor are such documents *per se* privileged.  These

20  issues are addressed below.

21    **A. The Court Should Order Haptic to Produce The Documents Identified In Its
Privilege Log, Which Are Relevant and Not Privileged**

22

23     **1. Documents Related to Valuations and Evaluations of the Asserted
Patent Are Relevant**

24  Haptic's privilege log confirmed what Apple has suspected all along:  Haptic is

25  withholding documents that discuss the merits of the Asserted Patent and/or this litigation,

26  including specifically the issues of validity and damages.  These documents are unquestionably

27  relevant to issues at play in this litigation.

28

4

1    Any assessment of Apple's alleged infringement and the validity of Haptic's patent is

2 undeniably relevant to the issues the jury must decide in this case. *E.g.*, *Fresenius Med. Care*

3 *Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004); *see also, e.g.*, *Lexington*

4 *Luminance LLC v. Feit Elec. Co.*, 2020 WL 10052404, at *3 (C.D. Cal. 2020) (finding

5 infringement-related discovery is "highly relevant to the infringement claims and defenses at issue

6 in the action"); *Impact Engine, Inc. v. Google LLC*, 2020 WL 2745230, at *4 (S.D. Cal. May 26,

7 2020) ("Google is not required to establish a prima facie case of invalidity before it can seek

8 discovery on the validity of the patents."). Here, Mr. Boshernitzan appears to have sent validity

9 and other merits assessments about the Asserted Patent to third parties to obtain litigation funding.

10 Those assessments not only bear directly on the issues that the jury must decide here, but they are

11 also relevant to assessing witness credibility at trial, such as that of Mr. Boshernitzan, as well as of

12 any experts who will testify at trial and were also involved with these assessments (Haptic's

13 privilege log is in many instances silent regarding who prepared the merits assessments at issue).

14    Similarly, any assessment of the value of the Asserted Patent is relevant to damages. A

15 common approach to calculate damages in a patent case is based on a "hypothetical negotiation"

16 for a license between the patent owner and the alleged infringer. *See, e.g., Lucent Technologies,*

17 *Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009). To ascertain the value of the

18 patent at or around the time of the hypothetical negotiation, parties will often seek past license

19 agreements or communications with third parties that included the asserted patent or technologies

20 related to the asserted patent to inform damages calculations. *E.g.*, *Phoenix. Sols. Inc. v. Wells*

21 *Fargo Bank, N.A.*, 254 F.R.D. 568, 581–82 (N.D. Cal. 2008) (finding licensing negotiations

22 discoverable). Haptic's representations to any actual or potential third-party litigation funders

23 about the potential for damages in this case and the value of the patent are undoubtedly relevant to

24 what Haptic—a party sitting at the negotiating table—thought about the value of its patent,

25 including specifically with respect to *Georgia-Pacific* Factor 15. The evaluations of any experts

26 Haptic and/or its litigation funders may have hired to assist in these evaluations of its patent would

27 also be relevant to *Georgia Pacific* Factor 14 ("The opinion testimony of qualified experts"), and

28 the opinions expressed by those experts could also be relevant to any number of other factors.

The documents listed on Haptic's privilege log are ones that courts across the country have determined are relevant to patent damages and have ordered produced. Just as examples, the logged documents appear to contain statements and representations that Haptic and/or its CEO made to third parties concerning the value of the Asserted Patent or this litigation—statements that would be incredibly helpful to the jury in determining appropriate damages. *See, e.g., Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, at *4–*5 (S.D. Cal. Aug. 12, 2020) ("Indeed, courts have generally ruled that litigation funding agreements and related documents are relevant and discoverable in patent litigation."); *Intel Corp. v. Protection Cap. LLC*, 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013) (finding third-party "investment and litigation information . . . relevant because it relates to the valuation of the patents").

Before the April 2 case management conference, Haptic argued that any documents shared with a litigation funder are categorically undiscoverable irrespective of whether they contain relevant subject matter. Dkt. No. 154 at 3–5 (Haptic's position of Joint Statement). That position was patently erroneous, as the Court made clear to Haptic during the hearing. *See, e.g.*, Ex. D (CMC Tr.) at 12:2–13:14 (ordering Haptic to prove its privilege claims through a privilege log and the parties to submit further briefing). Haptic has not said whether it will maintain that position after the case management conference. But to the extent it does, relevant documents do not become undiscoverable simply because Haptic shared them with a potential funder or labels them "litigation funding." Courts throughout the country have found otherwise and have ordered production of relevant documents even if they have been shared with a litigation funding entity. *See, e.g.*, *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (ordering production of documents the plaintiff had provided to a third-party litigation funder during negotiations of a litigation financing agreement); *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, 2016 WL 7665898, at *9 (S.D. Cal. Sept. 20, 2016) (similar); *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013) (finding a "litigation funding agreement" to be "relevant" and "not privileged" and ordering its production); *Intel*, 2013 WL 12313348, at *1 (granting motion to enforce subpoenas served on third-party litigation funders);

1   *In re Google Litig.*, 2011 WL 6113000, at \*3–\*4 (N.D. Cal. Dec. 7, 2011) (allowing third-party

2   discovery as to a firm that invested in a party in patent litigation).

3          Indeed, there is no reason to treat litigation funding entities any differently than other

4   categories of third parties, communications with whom courts regularly compel production.  *E.g.*,

5   *Phoenix*, 254 F.R.D. at 582 ("There are a multitude of ways in which [Plaintiff's] correspondences

6   with third parties related to license negotiations could be relevant to this litigation. . . .  [T]he

7   third-party negotiations could help [Defendant] ascertain the extent of its liability to [Plaintiff] and

8   to formulate an appropriate litigation strategy."); *Intel Corp*, 2013 WL 12313348, at \*3 ("district

9   courts in California generally find discovery into third party investors relevant in patent

10  litigation").  Haptic itself admitted during the CMC that these very same communications would

11  not be categorically exempt from discovery if shared with a traditional bank.  *See* Ex. D

12  (CMC Tr.) at 10:24–11:4.  There is no reason for this Court to treat these documents differently

13  simply because, rather than seeking traditional funding from a traditional bank, Haptic sought

14  funding from entities that specialize in financing litigation.

### 2.    Haptic Has Not Met Its Burden of Showing That the Withheld Documents Are Privileged

17         Haptic provides two bases for its claim of privilege: "Work Product" and "Common-

18  Interest Privilege."  Haptic has not met its burden of demonstrating that either doctrine shields the

19  documents listed on its privilege log.  And to the extent any privilege did exist, it was waived

20  when Haptic shared those documents with third-party litigation funders against whom Haptic was

21  negotiating a potential funding arrangement.

### a.    The Documents Listed on Haptic's Privilege Log Are Not Work Product

23         Apple first addresses Haptic's work-product claim, which is the only actual "privilege"

24  listed on Haptic's log.[3]  Because Haptic has not met its burden to demonstrate that the documents

---

[3] As discussed below, "common interest" does not itself create a privilege, but rather is an exception to the general rule that sharing otherwise privileged information waives a privilege (i.e., work product protection is not waived if shared pursuant to a common interest).  *See, e.g.*, *Waymo*

1   listed on its log are protected by the work-product doctrine, Haptic's entire privilege claim fails

2   and this Court need not go any further before ordering Haptic to produce the documents. *Sia Chue*

3   *Yang v. Schwarzenegger*, 2010 WL 11587074, at *10 (N.D. Cal. May 12, 2010) ("Waiver [] may

4   occur when a party fails to provide adequate descriptive and evidentiary support for an asserted

5   privilege) (citing *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992)).

6          The work-product doctrine is a judicially-created doctrine designed to "promote[] the

7   adversary system directly by protecting the confidentiality of papers prepared by or on behalf of

8   attorneys in anticipation of litigation." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951

9   F.2d 1414, 1428 (3d Cir. 1991). "Protecting attorneys' work product promotes the adversary

10  system by enabling attorneys to prepare cases without fear that their work product will be used

11  against their clients." *Id.* Thus, the doctrine extends only to "private memoranda and personal

12  recollections prepared or formed by an adverse party's counsel in the course of his *legal duties*."

13  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (emphasis added); *see also F.T.C. v. Boehringer*

14  *Ingelheim Pharms.*, Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) ("the doctrine protects only work

15  performed in anticipation of litigation or for trial").

16         The work-product doctrine does ***not*** protect information or documents, even if created by

17  attorneys, when created for business (not legal) purposes. *See, e.g., Prater v. Consol. Rail Corp.*,

18  272 F. Supp. 2d 706, 713 (N.D. Ohio 2003) (ordering production of documents created by

19  attorneys because "the lawyers were doing business work, not legal work, albeit in response to

20  lawsuits and the risk of lawsuits"); *United States v. Heine*, 2016 WL 6138245, *1–*2 (D. Or. Oct.

21  21, 2016) (privilege does not apply when "the communication's primary purpose is business, not

22  legal"); *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, 2011 WL 2181692,

23  at *6 n.3 (N.D. Cal. June 2, 2011) (noting that an insurer cannot delegate a coverage investigation

24  to an attorney, which is part of the insurer's business and then claim "work product privilege").

25  Moreover, "the fact that litigation may have been reasonably anticipated to occur at some point in

26  the future does not convert [] business functions into legal functions or make all communications

27  _____

28  *LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *7 (N.D. Cal. June 8, 2017) (Corley, M.J.)
    (finding common interest did not apply where there was no work product protection).

relating to these functions privileged or subject to work product protection." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1243 (D. Or. 2017). The doctrine also does not protect ordinary business functions—such as seeking funding for a business—which are not transformed into a legal function simply because an attorney participated in that business function. *Becker v. Willamette Cmty. Bank*, 2014 WL 2949334, at *3 (D. Or. June 30, 2014) ("While a corporation is certainly free to seek business advice from counsel, business advice does not become legal advice simply because it is rendered by counsel."); *see also SCM Corp v. Xerox Corp.*, 70 F.R.D. 508, 515 (D. Conn. 1976) ("Legal departments are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality.").

Haptic, as the party resisting discovery, bears the burden of proving that the documents in its privilege log are attorney work product. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *8 (N.D. Cal. June 8, 2017) (Corley, M.J.) (citing *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002)). Haptic's privilege log fails to demonstrate that the listed documents are work product.

To begin, Haptic does not explain how ***any*** of the communications were actually "prepared in anticipation of litigation." Each communication on Haptic's privilege log was made over a year before Haptic filed this lawsuit. It is well-settled that the mere existence of some future litigation does not render all documents relating to that future litigation work product. *E.g.*, *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983) ("The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad."). Rather, it appears from Haptic's privilege log that these documents were prepared ***for*** litigation funders to assess whether to go into business with Haptic, not for purposes of the litigation itself—rendering them not protected by the work-product doctrine. *In re Premera*, 296 F. Supp. 3d at 1243 (anticipated litigation "does not convert [] business functions into legal functions or make all communications relating to these functions" privileged). Haptic's conclusory statement—which appears in every entry—that the validity report, merits analysis, and damages analysis were "prepared in

1   anticipation of litigation" is a legal conclusion without factual support; indeed, most entries do not

2   even list any attorney representing Haptic.  *Northwest Airlines, Inc. v. Phillips*, 2009 WL

3   10687806, at *3 (D. Minn. Jan. 16, 2009) (finding privilege log descriptions "inadequate under

4   Fed. R. Civ. P. 26(b)(5)(A)" where such descriptions were "dominated by legal conclusions" such

5   as "'in anticipation of litigation,' 'in connection with rendering legal advice,' and 'communication

6   to further common interest,'" rather than "objective detail allowing fair assessment of those

7   conclusions."); *Acceleration Bay*, 2018 WL 798731 at *2 ("if a document sought 'is prepared for a

8   nonparty to the litigation, work product protection does not apply…") (citing *Moore's Federal*

9   *Practice* § 26.70 (3d ed. 2015)); *see also In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th

10  Cir. 1989) (materials prepared for non-party not protected by work product).  Haptic does not

11  provide any information to determine whether these documents were prepared in anticipation for

12  litigation or—as Haptic's privilege log suggests—prepared for the purposes of securing litigation

13  funding from entities who are in the business of funding litigation.

14          Additionally, Haptic cannot show that *any* of the communications were related to a legal,

15  rather than business, function of Haptic.  As discussed above, Haptic's privilege log entries all

16  demonstrate that Haptic respectively sent a "validity report" (Nos. 1–5), a "merits analysis" (Nos.

17  6–13) and a "damages analysis" (Nos. 14–16) to ▮ litigation funders: ▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮ *See* Ex. E (Haptic Priv Log).  Haptic was presumably sharing this information for the

20  purpose of securing funding (a business function)—not seeking legal advice about its prospective

21  case against Apple from third party financial entities.  Such a presumption is at least confirmed by

22  Haptic's description of Log Nos. 1, 3, 5, 10, each of which explain that Haptic and its prospective

23  litigation funders were discussing topics such as "[the] litigation funding process" or "Haptic's

24  estimate legal costs"—i.e., topics related to Haptic's business function of acquiring funding and

25

26

27

28

10

the funder's business function of providing it.[4]  These business functions are not transformed into legal functions simply because Haptic's only business appears to be litigation.

If anything, Haptic's log demonstrates that these communications and documents served and were prepared for a business function and are not work product.  Just as there is no privilege over one's application to a bank for a loan, documents Haptic created for and shared with its litigation funder prior to consummating a commercial transaction are not privileged.  *See Acceleration* Bay, 2018 WL 798731, at *1–*2 (finding pre-suit litigating funding documents prepared with a "primary purpose of obtaining a loan, as opposed to aiding in possible future litigation" not privileged.).

And even if Haptic could have substantiated a legitimate claim of work-product protection, it has not done so here.  For one, for nearly all entries, Haptic's log obscures ***who*** created the documents at issue.  For example, Haptic Log Nos. 1–5 relate to a report "analyzing the validity of the Asserted Patent" shared by Mr. Boshernitzan with various potential litigation funders, ▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See* Ex. E (Haptic Priv. Log) at 1.  Haptic claims that this validity report was "created at the direction of Susman Godfrey" but critically omits who actually prepared the report and what "direction" was given by Susman Godfrey.  *Id.*  Similarly, Haptic Log Nos. 6–13 relate to a "merits analysis" "***based on*** mental impressions of counsel."  *Id.* at 1–2.  Again, Haptic offers no explanation of who created this "merits analysis."  Haptic's description that this analysis is only "based on" its attorneys' mental impression raises more questions than it answers—such as (again) who prepared this merits analysis and to what extent it actually reflects its counsels' mental impressions of a yet-to-be-filed case.[5]  And finally, Log Nos. 14–16 describe

---

[4] Haptic's self-serving description that some of these emails—with a third-party litigation funder—discuss "legal strategy" is both questionable and without support.  Nonetheless, at a minimum, the documents should be submitted for in camera review and redactions can be applied to true work-product material should the Court deem that privilege not waived and applicable.

[5] Haptic clearly knows what documents its attorneys exclusively created.  For example, Log No. 1 describes a discussion of "Haptic's estimated legal costs…***prepared by Susman Godfrey***."  Ex. E (Haptic Priv. Log) at 1.  This stands in stark contrast to Haptic's other vague authorship claims, such as how the validity report and merits analysis were purportedly created "at the direction of counsel" or "based on" its attorney's mental impressions.

1    a "damages analysis" shared with Siltstone, again without Haptic's counsel.  *Id.* at 3.  Haptic's

2    privilege description claims that this damages analysis was both "prepared by" and "at the

3    direction of counsel."  Again, this vague, contradictory description suggests at least two authors,

4    which only calls Haptic's work product claim into further question.

5         Put simply, Haptic's privilege log does not provide "enough information" to enable either

6    Apple or the Court "to assess [Haptic's work product] claim."  *See* Fed. R. Civ. P. 26(b)(5)(A);

7    *see also Northwest Airlines*, 2009 WL 10687806, at *3 (finding privilege log descriptions

8    "inadequate under Fed. R. Civ. P. 26(b)(5)(A)" where such descriptions were "dominated by legal

9    conclusions"); *Dorf & Stanton Commc'ns. v. Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996)

10   (affirming finding of waiver where producing party "failed to provide a complete privilege log

11   demonstrating sufficient grounds for taking the privilege" (internal quotation marks and citation

12   omitted)).

### b.  Haptic's Voluntary Decision to Share Its Information With Adverse Third Parties Waived Any Possible Protection

13
14

15        Putting aside Haptic's work product claim, Haptic's voluntary decision to share those

16   documents with third parties against whom it was negotiating waived any possible work product

17   claim Haptic may have had over them.  *E.g., Resilient Floor Covering Pension Fund v. Michael's

18   Floor Covering, Inc.*, 2012 WL 3062294, at *6 (N.D. Cal. July 26, 2012) (Corley, M.J.) ("A party

19   may waive work product protection where it discloses otherwise protected documents to a third

20   party and thereby enables an adversary to gain access to the information.") (internal citations

21   omitted).  Neither of the exceptions to the general rule of waiver invoked by Haptic change this

22   outcome.

### i.    Haptic Does Not Share a "Common Interest" With Funders With Whom it is Adversely Negotiating

23
24        Haptic starts with an assertion not even its own litigation funder made[6]—that materials

25   shared between a party seeking funding during the negotiation and consummation of a possible

26
27   _____

28        [6] *See Haptic Inc. v. Apple Inc.*, No. 4:25-mc-0331, Dkt. No. 1 (Siltstone Motion to Quash);
     *id.* at Dkt. No. 1-1 (Walia Decl.).

APPLE INC.'S MOTION TO COMPEL
Case No. 3:24-cv-02296-JSC

funding relationship are somehow protected by the "common interest privilege."  Contrary to Haptic's apparent assertion, "[t]he common interest/joint defense doctrine does not make a document or communication privileged; rather, it is a doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest."  *Waymo*, 2017 WL 2485382, at *7 (granting motion to compel).  Thus, it is well-accepted that the common interest doctrine "'is not technically a privilege in and of itself but instead constitutes an exception to the rule on waiver where communications are disclosed to third parties.'"  *Id.* (collecting cases) (citing *Holmes v. Collection Bureau of Am., Ltd.*, 2010 WL 142484, at *2 (N.D. Cal. Jan. 8, 2010)).  "[F]or non-waiver of a privilege to apply," Haptic must demonstrate that it had "a common legal interest and the communications sought to be shielded from discovery must have been in furtherance of a joint strategy in support of that legal interest."  *Id.* at *9 (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007)).

Here, even assuming there is a cognizable privilege that protected the documents in the first place (there is not), Haptic's privilege log does not identify any common legal interest to support non-waiver.  That is because there is no common legal interest between parties sitting on opposite sides of a negotiation table, adversely negotiating a possible loan or other financing—just as Haptic and its litigation funders were doing in the withheld communications.  *Cf. Waymo*, 2017 WL 2485382, at *9 (finding no common legal interest because "Otto and Uber were on the opposite sides of a proposed acquisition with no obligation to consummate the transaction"); *see also Thought, Inc. v. Oracle Corp.*, 2014 WL 3940294, at *1, *3 (N.D. Cal. Aug. 11, 2014) (assessing communications between the plaintiff and third-party non-practicing entities, which were made at a time when the third parties were considering whether to acquire the plaintiff's patents, and concluding that they did not evidence a common legal interest); *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190–91 (D. Del. 2004) (concluding that the defendant did not share a common legal interest with a third party when the third party was evaluating plaintiff's

1    patents, because the defendant had not sufficiently proven that "at the time of their negotiations" it

2    and the third party "shared identical legal interests").[7]

3    　　　　Just as there would be no common legal interest between an applicant for a loan and a bank

4    while negotiating over the terms of that loan, there is no common legal interest between Haptic

5    and potential litigation funders while negotiating financing. And even if those parties ultimately

6    entered an agreement to fund the litigation, there is still not common "legal interest" in a purely

7    commercial transaction. *See Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 375–77

8    (D. Del. 2010) (overruling objections to an Order that found no common legal interest regarding

9    communications between a patentee and litigation financing companies).

10   　　**ii.**　　　　**Haptic Cannot Create Privilege By Entering into an NDA
          With Its Potential Litigation Funders**

11

12   　　　　Second, Haptic claims that the NDAs it signed with each of the litigation funding entities

13   form a separate basis for withholding these documents. Haptic is wrong on several counts.

14   　　　　To begin, Haptic is simply wrong that it can create privilege by signing an NDA with its

15   litigation funders. *Micron Tech., Inc. v. Factory Mut. Ins. Co.*, 2022 WL 1687156, at *2 (N.D.

16   Cal. May 26, 2022) ("Courts in this district and others have recognized that an NDA cannot be

17   used to shield information from discovery.") (citing *Multiven, Inc. v. Cisco Sys., Inc.*, 2010 WL

18   583955, at *3 (N.D. Cal. Feb. 16, 2010) ("It is an unremarkable proposition that an NDA will not

19   standing as a barrier to discovery between two parties in litigation." (internal citation and

20   quotation omitted)); *see also Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017) ("[T]he

21   non-disclosure agreement itself does not confer a legal privilege from discovery on any documents

22   that were not already privileged."); *Doe v. Benjamin Zaremski M.D., P.C.*, 2022 WL 2966041,

23   at *10 (S.D.N.Y. July 27, 2022) (collecting cases and stating "nondisclosure agreements do not

24   preclude discovery in federal litigation").

25   　　　　[7] Every document logged by Haptic pre-dates the filing of this suit and, presumably, the
consummation of any funding agreement. Nonetheless, even documents shared ***after***

26   consummation of a funding agreement would not be privileged because, at best, Haptic and its

27   funder share a common commercial interest. Claims that post-consummation communications are
privileged are addressed in Section III.B, *infra*, which addresses why documents not logged by

28   Haptic also cannot be privileged.

1        At most, the NDAs may be used as evidence that information shared by Haptic did not

2   increase its likelihood of discovery by an adversary.  *E.g.*, *Resilient Floor Covering Pension Fund*,

3   2012 WL 3062294, at *6.  But though Haptic ***claims*** it entered into an NDA with each these

4   potential litigation funders, Haptic has not produced any of the purported NDAs—despite requests

5   from Apple to do so.  Ex. F (Email Corresp. re MTC Briefing) at 2 (asking for "copies of any

6   NDAs and/or common interest agreements").  Moreover, despite repeatedly seeking refuge in

7   these purported NDAs, Haptic has not even discussed or disclosed any of the terms from these

8   purported NDAs in its privilege log.  *See* Ex. E (Haptic Priv. Log).  Even if these NDAs do exist,

9   each NDA needs to be assessed on its own terms.  The particular provisions of an individual NDA

10  will determine when information can be disclosed and whether sufficient protections were in place

11  to guard against further disclosure of information disclosed by Haptic.  Haptic cannot claim

12  protections under the NDA yet refuse to provide any evidence of their existence nor their terms.

13       In any event, an NDA would not be able to save Haptic because Haptic shared its alleged

14  attorney work product with an adverse party with whom it was attempting to negotiate a

15  commercial transaction.  As courts have explained, "[e]ven if confidential work product is

16  produced to a potential adversary under a confidentiality agreement, that will not alter the

17  objective fact that confidentiality has voluntarily been breached."  *S.E.C. v. Brady*, 238 F.R.D.

18  429, 444 (N.D. Tex. 2006) (finding waiver of work-product ***despite*** existence of a confidentiality

19  agreement).  Here, Haptic voluntarily chose to share information it asserts (incorrectly) is work

20  product with third parties with whom it was negotiating a potential commercial transaction, and

21  often without its own counsel involved in the communication.  The clear result is waiver.  And

22  because Haptic waived any potential privilege over those documents by sharing them with a

23  potential adversary, Haptic "waive[d] its right to assert that privilege against any other party,"

24  including Apple in this proceeding.  *Republic of Philippines v. Westinghouse Elec. Corp.*, 132

25  F.R.D. 384, 390 (D.N.J. 1990) (citations omitted).

26

27

28

1

2

**B.    The Court Should Order Haptic to Produce or Log Any Additional Relevant Information It Has Withheld As Purportedly Relating to "Litigation Funding"**

In addition to ordering Haptic to produce the documents listed on its privilege log, this Court should also order Haptic to produce or log all other documents it has unilaterally withheld as relating to "litigation funding" because—as Haptic's limited privilege log already demonstrates—the documents Haptic has chosen to withhold contain non-privileged information that is highly relevant to issues in this case.  This includes, at least, Haptic's litigation funding agreement with Siltstone (which is relevant to rebut Haptic's potential trial themes), statements made by Haptic's corporate representatives, and standing.

**1.    Haptic Is Undoubtedly In Possession of Relevant Documents That it Has Not Logged**

Haptic's privilege log also does not include documents that its litigation funder referenced in motion-practice concerning Apple's subpoena.  Haptic's privilege log contains only 16 entries and is presumably limited to communications with litigation funders (and potential funders) regarding any valuations or evaluations of the Asserted Patent.  It is unclear what criteria Haptic used to make this determination, as its log does not include information directly relevant to the value of the asserted patent, including the litigation funding agreement itself.  For example, the Walia Declaration discussed at least two communications between Siltstone and Haptic and/or its counsel in January 2022 that are not on Haptic's privilege log.  *Compare* Siltstone Motion to Quash, No. 4:25-mc-0331, Dkt. No. 1-1 (Walia Decl.) *with* Ex. E (Haptic Priv. Log).  In addition to these communications, Haptic apparently possesses communications surrounding (i) the party's discussion and signing of a non-disclosure agreement and (ii) Siltstone's eventual agreement to fund this litigation.  All such communications and agreements are presumptively relevant (or at least related) to the Siltstone communications regarding Haptic's damages analysis that are on Haptic's privilege log.  Haptic's other communications and agreements with Siltstone should be, at the very least, logged.  Given these disparities and the clear relevance of the few documents Haptic chose to log, Haptic is undoubtedly in possession of other information relevant to this litigation that it has chosen to withhold from discovery.

16

1

2

### a.     Haptic's Privilege Log Omits Documents in Its Possession Relating to Value of the Asserted Patent, Such as the Funding Agreement Itself

3

As discussed above (Section III.A.1, *supra*), documents concerning the value of the

4

Asserted Patent are relevant to the damages allegedly owed by Apple in this case.  All of them

5

should be produced or logged.

6

While Apple does not and cannot know what documents Haptic has omitted from its log,

7

one absence is glaring and notable:  Any agreement between Haptic and its litigation funder.

8

Numerous courts have deemed the litigation funding agreement itself "directly relevant" to "the

9

valuations placed on the ... patents prior to the present litigation," and thus, potential damages.

10

*Taction Tech.*, 2022 WL 18781396, at *4–*5; *see also, e.g., Impact Engine*, 2020 U.S. Dist.

11

LEXIS 145636, at *4–*5 ("[C]ourts have generally ruled that litigation funding agreements and

12

related documents are relevant and discoverable in patent litigation."); *Odyssey Wireless*, 2016

13

WL 7665898, at *7 ("[b]ecause [plaintiff] seeks damages from the alleged infringement of its

14

patents, [], valuations of [plaintiff's] patents are directly relevant to these claims, *see* Fed. R. Civ.

15

P. 26(b)(1).  This conclusion disposes of the Plaintiff's relevance objection.").  Haptic should be

16

ordered to produce its funding agreement.

17

Also absent are communications relating to the negotiation of the funding agreement—

18

information also reflective of the value Haptic put on the Asserted Patent.  Specifically, the terms

19

Haptic sought and/or agreed to accept during any negotiations of a financing arrangement here

20

would provide insight into the value Haptic ascribed to the Asserted Patent and would be just as

21

relevant and helpful to the jury in determining damages.  *See, e.g., Impact Engine*, 2020 U.S. Dist.

22

LEXIS 145636, at *4–*5; *Intel*, 2013 WL 12313348, at *3; *Odyssey Wireless*, 2016 WL 7665898,

23

at *7.

24

### b.     Documents Necessary to Counter a "David v. Goliath" Story Are Relevant to Trial Themes

25

26

Apple is also entitled to seek discovery to rebut themes Apple expects Haptic to pursue at

27

trial.  Based on how Haptic has prosecuted this case thus far, Apple expects that Haptic will

28

attempt to tell a "David v. Goliath" story at trial, portraying Haptic as a small company fighting

against a Big Tech company (Apple) in an attempt to curry favor with the jury.  In reality, Haptic is backed by a sophisticated litigation finance company, and Apple should be allowed to take discovery into, for example, how much money Haptic received in litigation funding.  To the extent Haptic attempts to tell its "David v. Goliath" story at trial, it will have opened the door to evidence about its funders by presenting a misleading story to the jury.  *See, e.g.*, *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (explaining that "[w]hen one party has 'opened the door' on an issue, [the court] may introduce evidence on the same issue to rebut any false impression" (alterations and quotation marks omitted)).  As courts have explained, "[d]efendants are entitled to conduct discovery that may refute potential trial themes," including evidence about litigation funders to refute an expected "David vs. Goliath" trial story.  *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018-19 (D. Ariz. 2020).

### c. Prior Statements Made by Haptic's Corporate Representative Are Relevant, Including to Witness Credibility

Finally, Apple's discovery requests would also encompass statements made by Haptic's sole corporate representative, Mr. Boshernitzan, and any other third-party witnesses that Haptic intends to bring to trial.  (*E.g.,* Ex. A (requesting documents concerning "the accused Products, the Asserted Patent, and/or This Litigation, including Communications between Haptic and any third party" (RFP No. 19)).  This information is relevant to the credibility of Haptic's witnesses.  *Cont'l Circuits*, 435 F. Supp. 3d at 1019.  For example, the jury should know whether there are any discrepancies between the representations Mr. Boshernitzan has made about the value of the Asserted Patents to interested third parties and under oath before this Court.  *Id.*; *Sloan v. Oakland Police Dep't*, 2003 U.S. Dist. LEXIS 29572, at *7 (N.D. Cal. 2003) ("The scope of discovery, . . . encompasses information 'reasonably calculated to lead to the discovery of admissible evidence,' including impeachment evidence").  Moreover, any information that may show whether Mr. Boshernitzan's testimony is biased is important information to help a jury properly evaluate his credibility, such as the receipt of substantial compensation (or even, substantial loss) based on whether Haptic succeeds in this litigation.  *Cont'l Cirs.*, 435 F. Supp. 3d at 1019.

18

1

2

### d.   Haptic's Agreement(s) with Litigation Funders, and Related Documents, are Relevant to Standing

3

4

5

At the CMC, this Court expressed skepticism that Haptic's relationship with its litigation funder has any relevance to standing. Ex. D (CMC Tr.) at 3:23–5:20. In this case, the limited information provided by Haptic and its litigation funder do not resolve all standing concerns.

6

7

8

9

10

11

12

13

14

15

To have standing to assert patent infringement in its own name, the plaintiff must have acquired "all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007). Moreover, to continue prosecuting a lawsuit, the plaintiff must maintain that entire bundle of sticks throughout the litigation. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation.") (internal citation omitted). While the statements made by Haptic or its litigation funder may resolve concerns about Haptic's standing at the beginning of the case (i.e., based on Haptic's allegations in its complaint), they do not resolve concerns about Haptic's future standing that may arise as this case continues.

16

17

18

19

20

21

22

23

24

25

26

27

28

For example, the Declaration of Mani Walia states that "[n]one of the Siltstone Entities have any ownership interest rights, title, or other in interest in the 738 Patent and are not parties to the Haptic Action." No. 4:25-mc-0331, Dkt. No. 1-1 (Walia Decl.), ¶ 8 (S.D. Tex. Feb. 24, 2025). While this presumptively applies to Siltstone's ***current*** interest, it does not address any future interest created through Siltstone's agreement to fund this litigation. The facts in *Uniloc USA, Inc. v. Apple, Inc.*, illustrate why a litigation funder's future interest in the asserted patent is relevant to standing. 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020). In *Uniloc*, the plaintiff granted a litigation funding entity a future interest in the asserted patent that would vest only if certain payments were not made. *Id.* at *1. As the litigation proceeded, the plaintiff defaulted on those payments, and that ownership interest vested. *Id.* at *2. Apple then brought a motion to dismiss, arguing that because the plaintiff no longer had sufficient ownership to bring suit alone it no longer had standing to sue. *Id.* This issue would never have been discovered had the plaintiff in that case refused to produce its agreement with the litigation funder—as Haptic refuses to do so

19

here.  Yet, in *Uniloc*, that agreement resolved the entire case on the threshold issue of standing, and thereby preventing further expenditure of the Court's and the parties' resources on a case with fundamental legal deficiencies.  Apple should similarly be able to investigate here whether Haptic has and continues to have standing to pursue its case, including by seeing the document that defines the relationship between Haptic and the litigation funding entities.

Also relevant to standing, and perhaps more fundamentally, Apple and the public are entitled to know who is directing the litigation in this case.  The reasons for such disclosure were articulated by the District of Delaware in a lengthy opinion requiring the disclosure of litigation funding activities.  *See generally Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 17338396, at *1 (D. Del. Nov. 30, 2022).  Litigants should not be able to hide behind complex litigation-finance arrangements to create a "lack of transparency as to who the real parties before the Court are, about who is making decisions in these types of litigation."  *Id.* at *1.  In order to (for example) facilitate resolution of this case, Apple should be entitled to know who the real decision-makers are in this case and who stands to benefit from any resolution.

### 2.  Apple Has a Right to Test the Privilege Claim for Additional Discovery, But Haptic Did Not Log It

Haptic should not be able to shield relevant documents through a blanket label of "privilege."  Beyond the sixteen entries in the privilege log already ordered by the Court, Haptic refuses to substantiate any individual claim of privilege by providing a privilege log, as parties are required to do for every other type of relevant discovery.  *Schwarzenegger*, 2010 WL 11587074, at *11.  If Haptic continues to refuse to provide relevant discovery based on privilege, it should be required to log ***all*** of the documents responsive to Apple's discovery requests that it is withholding.

As explained above (Section III.A, *supra*), Haptic is simply wrong that all documents it shares with its litigation funder that would otherwise be deemed relevant and non-privileged in any other setting can suddenly be withheld under a broad claim of privilege.  Courts throughout the country have rejected broad claims of privilege of litigation-funding materials.  *E.g.*, *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822, at *7

20

1   (W.D.N.C. July 24, 2023) (finding litigation-funding related documents not privileged and

2   ordering their production); *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 2013 WL 11311345, at *3 (S.D.

3   Fla. Nov. 4, 2013) (finding a "litigation funding agreement" to be "relevant" and "not privileged"

4   and ordering its production); *Intel*, 2013 WL 12313348, at *1 (granting motion to enforce

5   subpoenas served on third-party litigation funders); *AIPI, LLC v. Netflix, Inc.*, No. 1:24-mc-2

6   (LMB/WEF), Dkt. No. 96 (E.D. Va. Apr. 18, 2025) (ordering production of communications

7   between plaintiff and litigation funder); *Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*,

8   2020 WL 5554361, at *3 (E.D. Pa. Sept. 16, 2020).

9        While there may be some documents shared with a litigation funder that are legitimately

10  privileged (for example, certain documents shared after the establishment of a common legal

11  interest), there are others that are not.  Nor does privilege protect facts surrounding the agreement

12  itself—such as the amount its funder invested in Haptic, its share of the profits, and the terms of

13  the agreement.  *See, e.g.*, *Upjohn*, 449 U.S. at 395–96 ("A fact is one thing and a communication

14  concerning that fact is an entirely different thing.").  Neither Apple nor the Court has been able to

15  assess a full privilege log to determine what, if any, privilege, work product, or common interest

16  protections Haptic believes justifies its blanket assertion of privilege for any other

17  communications.

18       Even had Haptic provided a privilege log, Haptic would almost certainly not be able to

19  substantiate its claim that all withheld documents are privileged.  At a minimum, documents

20  shared by Haptic prior to and during the negotiation of any attempted litigation financing

21  agreements are categorically not privileged.  Each of the categories Haptic has previously claimed

22  protect the withheld documents are discussed below.

23       **Attorney-Client Privilege**.  Though not asserted in its privilege log, Haptic has previously

24  claimed that documents shared with its litigation funder are protected by the attorney-client

25  privilege.  *See* Kete Decl., ¶ 8; *see also* Dkt. No. 154 (Jt Statement re Motion to Compel).  They

26  are not.

27       "The attorney-client privilege protects confidential communications between attorneys and

28  clients, which are made for the purpose of giving legal advice." *Valeo Schalter und Sensoren*

21

*GmbH v. NVIDIA Corp.*, 2025 WL 41936, at *5 (N.D. Cal. Jan. 6, 2025) (citing *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)).  The third parties Haptic communicated with—including its litigation funders—are not part of the attorney-client relationship between Haptic and its counsel.  *Midwest Athletics*, 2020 WL 5554361, at *3 (litigation funder communications not privileged).  They are, instead, third parties[8] that are afforded no direct protections by Haptic's attorney-client privilege and have no role in giving or seeking legal advice to Haptic or from its counsel.  *See U.S. v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. Dec. 2003) ("communications between client and attorney for the purpose of relaying communication to a third party [are] not confidential and not protected by the attorney client privilege."); *U.S. v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002) (attorney-client privilege protects from discovery communications and information between a client and counsel that are not disclosed to a third party); *cf. U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice.  If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist.") (internal citations omitted).  This is for good reason:  there is no logical connection between the attorney-client privilege's goal (e.g., safeguarding legal advice, *see Upjohn*, 449 U.S. at 389) and the goal of obtaining funding from a litigation investor.

That Haptic's attorneys may have been involved in preparing material shared with its litigation funder is immaterial.  Even if initially privileged, the voluntary disclosure of a privileged document to a third party waives privilege.  *United States v. Ruehle*, 583 F.3d 600, 612 (9th Cir. 2005) (it is a "settled rule that *any* voluntary disclosure of information to a third party waives the attorney-client privilege") (emphasis in original); *Finjan, Inc. v. SonicWall, Inc.*, 2020 WL 4192285, at *4 (N.D. Cal. July 21, 2020) ("[Patentee] voluntarily disclosed the disputed materials to a third-party investor who merely observed its board meetings.  This voluntary disclosure waived whatever attorney-client privilege otherwise attached to these materials."); *see also United*

---

[8] There is also no evidence that any of these parties (i) are part of Haptic's corporation organization, *United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010); or (ii) are a co-client with Haptic, *McMorgan & Co. v. First Cal. Mortg. Co.*, 931 F. Supp. 699, 701 (N.D. Cal. 1996).

1    *States v. Schussel,* 291 Fed. Appx. 336, 347 (1st Cir. 2008); *United States v. Lawless,* 709 F.2d

2    485, 487 (7th Cir. 1983).  Had Haptic communicated directly with any other third party about a

3    business transaction, the communications would not be privileged.  Including counsel as part of

4    these same communications does not change that conclusion.  *Midwest Athletics*, 2020 WL

5    5554361, at *4.

6    **Work Product**.  Similarly, documents Haptic shared with its litigation funder prior to and

7    after consummating a commercial transaction are not protected by the work-product privilege.  As

8    discussed above (*see* Section III.A.2.a, *supra*), the work-product privilege protects "only work

9    performed in anticipation of litigation or for trial."  *Boehringer*, 778 F.3d at 149.  It does not

10    protect the work of lawyers advancing ***business*** functions.  *See, e.g., Prater*, 272 F. Supp. 2d at

11    713 (ordering production of documents created by attorneys because "the lawyers were doing

12    business work, not legal work, albeit in response to lawsuits and the risk of lawsuits").  Materials

13    created by Haptic to obtain a loan and/or financing from its litigation funders were, by definition,

14    created and shared for a business, commercial purpose—not a legal one—and are not protected by

15    the work-product privilege.

16    **Waiver – Common Interest**.  Finally, materials Haptic shared with its litigation funders

17    are not exempt from the general rule of waiver, at least before the execution of a litigation funding

18    agreement when the parties were adversely negotiating a commercial transaction.  As discussed

19    above (*see* Section III.A.2.b.i, *supra*), Haptic and its litigation funders were sitting on opposite

20    sides of a negotiation table and did not share a common interest.

21    Even as to documents created after consummation of an agreement (for which Haptic has

22    refused to provide any details above, including the date the common interest attached), Haptic

23    cannot substantiate a claim that it and its litigation funders share a common ***legal*** interest.  There

24    is, at best, a common ***commercial*** interest between Haptic and its litigation funders—not a legal

25    one.  *See Nidec Corp*, 249 F.R.D. at 580 (no common interest protection in purely commercial

26    transaction).  And even if there were a common legal interest (there is not), there is nothing here to

27    suggest that Haptic's post-agreement communications with, for example, Siltstone were made

28    with the intent to further that legal effort.  *Id.* (requiring that common interest disclosure be made

23

in furtherance of a common legal interest to preserve privilege). Just because two entities (here, Haptic and its funders) may share the same vested *financial* interest in the outcome of the litigation does not change transform the nature of their commercial relationship into a joint-defense or common interest.

## IV.    CONCLUSION

For these reasons, Apple requests that the Court order Haptic to produce the documents listed on its privilege log and to produce or log all other relevant documents withheld under the guise of "litigation funding." Apple also asks the Court to grant any other relief deemed appropriate.

Dated: April 21, 2025                    Respectfully submitted,


By:    /s/ Joy B. Kete
Roger A. Denning (SBN 228998)
denning@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Jeff H. Burton (SBN 328305)
jburton@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Katherine D. Prescott (SBN 215496)
prescott@fr.com
Jeanel N. Sunga (SBN 333815)
sunga@fr.com
Claire Chang (SBN 341420)
cchang@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: 650-893-5070 / Fax: 650-839-5071

Qiuyi Wu (Admitted *pro hac vice*)
qwu@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: 516-542-5070 / Fax 617-542-8906

Joshua H. Park (Admitted *pro hac vice*)
jpark@fr.com
FISH & RICHARDSON P.C.
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: 713-654-5335 / Fax: 713-652-0109

*Attorneys for Defendant APPLE INC.*

25