Davida Brook (SBN 275370)
dbrook@susmangodfrey.com
Connor Cohen (SBN 354686)
ccohen@susmangodfrey.com
Xue Li (SBN 333826)
ali@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Brian D. Melton (Admitted *pro hac vice*)
bmelton@susmangodfrey.com
Rocco Magni (Admitted *pro hac vice*)
rmagni@susmangodfrey.com
Ace M. Factor (Admitted *pro hac vice*)
afactor@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Counsel for Plaintiff Haptic, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| HAPTIC, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 3:24-cv-02296-JSC<br><br><br>**PLAINTIFF HAPTIC INC.'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO COMPEL [164]**<br><br>Date:  May 29, 2025<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 8<br>Judge:  Hon. Jacqueline Scott Corley |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    ARGUMENT ...................................................................................................... 5

        A.      Litigation Funders Are Different from Banks ........................................ 5

        B.      Haptic's Communications with Litigation Funders Are Irrelevant ........ 6

                1.      Valuation and Evaluation of the Asserted Patent ....................... 8

                2.      Litigation-Funding Documents Beyond the Court's Logging Order. ........ 11

                        a.      Possible Trial Themes. ..................................................... 11

                        b.      Credibility and Bias. ........................................................ 11

                        c.      Standing. ........................................................................... 13

                3.      Apple's Caselaw is Unpersuasive. ............................................. 14

        C.      Haptic's Communications with Litigation Funders Are Privileged. ...... 16

                1.      Attorney Work-Product Protection. ........................................... 17

                2.      No Waiver. .................................................................................. 21

                3.      No Substantial Need. .................................................................. 24

IV.     CONCLUSION ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) ............................................................. *passim*

*ACLU of N. Cal. v. U.S. Dep't of Just.*,
  880 F.3d 473 (9th Cir. 2018) ................................................................................ 17

*Ashgari-Kamrani v. United Servs. Auto. Ass'n*,
  2016 WL 11642670 (E.D. Va. May 31, 2016) .................................................. 7, 13

*AVM Techs., LLC v. Intel Corp.*,
  2017 WL 1787562 (D. Del. May 1, 2017) ......................................................... 9, 11

*Becker v. Willamette Cmty. Bank*,
  2014 WL 2949334 (D. Or. June 30, 2014) ............................................................. 20

*Benitez v. Lopez*,
  2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) ....................................................... 12

*Binks Mf. Co. v. Nat'l Presto Indus., Inc.*,
  709 F.2d 1109 (7th Cir. 1983) ............................................................................... 20

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005) ............................................................................... 17

*Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*,
  299 F.R.D. 638 (E.D. Cal. 2014) ........................................................................... 22

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*,
  2015 WL 778846 (Del. Ch. Feb. 24, 2015) ........................................................... 20

*Cirba Inc. v. VMWare, Inc.*,
  2021 WL 7209447 (D. Del. Dec. 14, 2021) ............................................................. 7

*Cobra International, Inc. v. BCNY International, Inc.*,
  2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013) ......................................... 16, 20

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*,
  2021 WL 10425630 (C.D. Cal. Mar. 26, 2021) .................................... 7, 13, 15, 16

*Cont'l Cirs. LLC v. Intel Corp.*,
  435 F. Supp. 3d 1014 (D. Ariz. 2020) ............................................................. *passim*

ii

*Design with Friends, Inc. v. Target Corp.*,
2024 WL 4333114 (D. Del. Sept. 27, 2024) ........................................................ 6, 17

*Devon It, Inc. v. IBM Corp.*,
2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ........................................................ 23

*Doe v. Soc'y of Missionaries of Sacred Heart*,
2014 WL 1715376 (N.D. Ill. May 1, 2014) ........................................................ 21

*Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*,
2023 WL 4750822, at *7-8 (W.D.N.C. July 24, 2023)........................................ 20

*Fleet Connect Sols. LLC v. Waste Connections US, Inc.*,
2022 WL 2805132 (E.D. Tex. June 29, 2022) ........................................................ 13

*Fresenius Med. Care Holding Inc. v. Baxter Int'l Inc.*,
224 F.R.D. 644 (N.D. Cal. 2004) ........................................................ 16

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
778 F.3d 142 (D.C. Cir. 2015) ........................................................ 21

*Fulton v. Foley*,
2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ........................................................ 6

*Ga.-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................ 9

*GoTV Streaming, LLC v. Netflix, Inc.*,
2023 WL 4237609 (C.D. Cal. May 24, 2023) ................................................ *passim*

*Haptic, Inc. v. Apple Inc.*,
No. 4:25-mc-00331 (S.D. Tex. Feb. 24, 2025), ECF No. 1-1........................ *passim*

*Hardin v. Samsung Elecs. Co.*,
2022 WL 14976096 (E.D. Tex. Oct. 25, 2022)........................................................ 21

*Herbert v. Lando*,
441 U.S. 153 (1979) ........................................................ 7

*Impact Engine, Inc. v. Google LLC*,
2020 U.S. Dist. LEXIS 145636, at *4 (S.D. Cal. Aug. 12, 2020)................................ 14, 15

*Impact Engine, Inc. v. Google LLC*,
2020 WL 2745230 (S.D. Cal. May 26, 2020) ........................................................ 16

*In re Google Litig.*
2011 WL 6113000, at *3 (N.D. Cal. Dec. 7, 2011). ........................................................ 15

*In re Grand Jury*,
   23 F.4th 1088 (9th Cir. 2021) ........................................................................... 17, 18

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
   357 F.3d 900 (9th Cir. 2004) ........................................................................... 17, 18

*In re Nimitz Techs. LLC*,
   2022 WL 17494845, at *1 (Fed. Cir. Dec. 8, 2022) .......................................... 13, 14

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   296 F. Supp. 3d 1230 (D. Or. 2017) ........................................................................ 20

*In re Regents of Univ. of Cal.*,
   101 F.3d 1386 (Fed. Cir. 1996) ................................................................................ 22

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab.*
   *Litig.*,
   405 F. Supp. 3d 612 (D.N.J. 2019) ............................................................... 7, 15, 19

*Intel Corp. v. Protection Cap. LLC*
   2013 WL 12313348, at *1, 3 (S.D. Cal. Oct. 2, 2013) ............................................. 15

*Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*,
   2011 WL 2181692 (N.D. Cal. June 2, 2011) ........................................................... 20

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
   2018 WL 466045 (W.D. Pa. Jan. 18, 2018) ............................................................. 19

*Leader Technologies, Inc. v. Facebook, Inc.*,
   719 F. Supp. 2d 373 (D. Del 2010) .......................................................................... 23

*Lexington Luminance LLC v. Feit Elec. Co.*,
   2020 WL 10052404 (C.D. Cal. 2020) ...................................................................... 16

*Micro Motion, Inc. v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990) .................................................................................. 7

*Miller UK Ltd. v. Caterpillar, Inc.*,
   17 F. Supp. 3d 711 (N.D. Ill. 2014) ......................................................................... 19

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   2019 WL 118595 (N.D. Cal. Jan. 7, 2019) ........................................................... 7, 12

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
   2011 WL 1714304 (E.D. Tex. May 4, 2011) ....................................................... 19, 21

*Mw. Athletics & Sports All. LLC v. Ricoh USA, Inc.*,
   2020 WL 5554361 (E.D. Pa. Sept. 16, 2020) ....................................................... 1, 20

*NantWorks, LLC v. Niantic, Inc.*,
  2022 WL 1500011 (N.D. Cal. May 12, 2022) ........................................................ 12

*Nimitz Techs. LLC v. CNET Media, Inc.*,
  2022 WL 173338396 (D. Del. Nov. 30, 2022) ...................................................... 14

*Nimitz Techs. LLC v. CNET Media, Inc.*,
  2023 WL 717441 (D. Del. Nov. 27, 2023) ............................................................ 14

*Odyssey Wireless, Inc. v. Samsung Elecs. Co.*,
  2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ........................................ 8, 18, 21, 22

*Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) ...................................................................... 9, 16

*Prater v. Consol. Rail Corp.*,
  272 F. Supp. 2d 706 (N.D. Ohio 2003) ................................................................ 20

*SCM Corp. v. Xerox Corp.*,
  70 F.R.D. 508 (D. Conn. 1976) ............................................................................ 20

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ................................................................................................ 8

*Taction Tech., Inc. v. Apple Inc.*,
  2023 WL 4611826 (S.D. Cal. 2023) ................................................................ 16, 18

*TC Tech. LLC v. Sprint Corp.*,
  2018 WL 6584122 (D. Del. Dec. 13, 2018) (Andrews, J.) .............................. 15, 24

*Trs. of Purdue Univ. v. STMicroelectronics, Inc.*,
  2023 WL 11917023 (W.D. Tex. Jan. 18, 2023) .................................................... 10

*Uniloc USA, Inc. v. Apple, Inc.*,
  2020 WL 7122617, at *4-7 (N.D. Cal. Dec. 4, 2020) ........................................... 13

*United Access Techs., LLC v. AT&T Corp.*,
  2020 WL 3128269 (D. Del. June 12, 2020) .......................................................... 15

*United States v. Heine*,
  2016 WL 6138245 (D. Or. Oct. 21, 2016) ............................................................ 20

*United States v. Nobles*,
  422 U.S. 225 (1975) .............................................................................................. 17

*United States v. Ocwen Loan Serv., LLC*,
  2016 WL 1031157 (E.D. Tex. Mar. 15, 2016) ...................................................... 21

v

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ........................................................................................ 21, 22

*V5 Techs. v. Switch, Ltd.*,
   334 F.R.D. 306 (D. Nev. 2019) ............................................................................................. 7

*VHT, Inc. v. Zillow Grp.*,
   2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) .................................................................... 7

*Walker Dig., LLC v. Google, Inc.*,
   2013 WL 9600775 (D. Del. Feb. 12, 2013) .......................................................................... 23

*Waymo LLC v. Uber Techs.*,
   2017 WL 2485382 (N.D. Cal. June 8, 2017) (Corley, J.) .......................................... 21, 22, 23

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 7

Fed. R. Civ. P. 26(b)(3) .......................................................................................................... 17

Fed. R. Civ. P. 26(b)(3)(A)(ii) ............................................................................................... 24

**Other Authorities**

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8 Fed. Prac. & Proc.
   § 2024 (2d ed. 1994) .......................................................................................................... 17

*Alternative Asset Class Investment Strategies*, SILTSTONE CAPITAL (Oct. 25, 2023),
   https://siltstonecapital.com/alternative-asset-class-investment-strategies ............................... 5

Robert B. Fuqua, *How Litigation Funders Have Improved the Quality of
   Settlements in America*, HARV. NEGOT. L. REV. (Aug. 2020) ................................................... 5

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

## I.       **INTRODUCTION**

This dispute centers on Apple's improper efforts to peer into Haptic's confidential communications with litigation funders. Apple's motion to compel is a transparent effort to unfairly leverage Haptic's financial circumstances in order to go fishing into irrelevant, privileged, and highly sensitive matters. During a recent case management conference, based on oral argument and the parties' earlier joint dispute statement, the Court noted the majority of Apple's discovery requests targeting litigation-funding information was "way overbroad." The Court then invited briefing on the discoverability of litigation-funding documents relating to the "valuation or evaluation" of the Asserted Patent—the only two categories "that might conceivably be relevant" in this case. And despite Apple requesting a privilege log to "streamline the issues that are briefed," Apple ignores the Court's guidance and maintains its efforts to seek *all* categories of litigation funding-related documents from its prior briefing. Apple's motion relies on pure speculation untethered to the facts of this case and unpersuasive legal arguments. Ultimately, the materials Apple seeks are not discoverable; they are either plainly irrelevant or protected by privilege.

## II.      **BACKGROUND**

Counsel's initial evaluation of Haptic's anticipated litigation against Apple involved a thorough investigation of Haptic's claims and careful assessment of the merits and potential damages. (Ex. A ¶¶ 6–7). To inform that evaluation, Susman Godfrey engaged a third-party consulting expert firm and oversaw its creation of a report identifying the state of the art prior to U.S. Patent No. 9,996,738 (the "'738 Patent" or "Asserted Patent"). (*Id.* at ¶ 7). Likewise, Haptic's counsel engaged and collaborated with an expert to prepare an analysis of a potential damage model against Apple in anticipated litigation. (*Id.*)

Satisfied that Haptic's anticipated case against Apple was meritorious, Haptic's counsel assisted Haptic in communicating with several litigation-funding entities and, ultimately, obtaining litigation funding. (*Id.* at ¶ 8). Before sharing any substantive information relating to the Asserted Patent or anticipated litigation, Haptic entered into nondisclosure and common-interest agreements with the litigation funders. (*Id.* at ¶¶ 10–16); *see also* Declaration of Mani Walia, at ¶ 5, *Haptic,*

*Inc. v. Apple Inc.*, No. 4:25-mc-00331 (S.D. Tex. Feb. 24, 2025), ECF No. 1-1 ("Walia Declaration"). In each of those agreements, the parties agreed that they shared a common interest in Haptic's pursuit of anticipated litigation and further agreed not to disclose any documents or information provided by Haptic or relating to the litigation funders' evaluation of that litigation. (Ex. A ¶¶ 11–16); Walia Declaration, at ¶ 5. Ultimately, Haptic entered into a funding agreement with Siltstone Capital. (Ex. A ¶¶ 8, 19); Walia Declaration, at ¶ 6. In the words of Siltstone's Managing Partner and General Counsel:

> Haptic has at all times had control over [this] Action. None of the Siltstone Entities have any ownership interest, rights, title, or other interest in the 738 Patent and are not parties to [this] Action. None of the Siltstone Entities' approval is required for any litigation or settlement decision in the [this] Action or with respect to the 738 Patent, nor do any of the Siltstone Entities have authority to make litigation or settlement decisions regarding the same.

*Id.* at ¶ 9; *accord* (Ex. A ¶¶ 20–21).

During discovery in this case, Apple sought Haptic's communications with litigation funders. (*See* Dkt. 164-2 (RFP Nos. 13–14); Dkt. 164-3 (ROG No. 7); Dkt. 164-4 (Topics 39–41)). In June 2024, Haptic objected to Apple's first sets of discovery requests targeting litigation-funding information as irrelevant, overbroad, not proportional to the needs of the case, and seeking privileged information. (Exs. B & C). In supplemental responses served in September 2024, Haptic reasserted its relevance and privilege objections. (Exs. D & E; *see also* Ex. F). Although Haptic offered to meet and confer with Apple about its discovery requests, Apple did not take Haptic up on that offer until February 2025. Meanwhile, Apple subpoenaed Siltstone in a parallel effort to gather the same information; Siltstone moved to quash the subpoena. Siltstone's Motion to Quash Apple's Subpoena, No. 4:25-mc-00331 (S.D. Tex. Feb. 24, 2025), ECF No. 1 ("Siltstone's Motion to Quash").

During a February 20, 2025 meet and confer between the parties' lead counsel, Haptic explained that litigation-funding information is not relevant to any claims or defenses and is privileged. The parties reached an impasse. During subsequent communications about the issue, in the interest of compromise, Haptic offered to provide a verified interrogatory response including: (1) the name of the entity lending capital to Haptic for litigation costs; (2) confirmation that that

entity has no ownership interest in the Asserted Patent, Haptic, or any entity owned or controlled by any investor in Haptic; (3) confirmation that no individual witness has or will receive anything of value from the that entity based on the outcome of this litigation; and (4) confirmation that Haptic did not provide any litigation-funding entity—or receive from any litigation-funding entity—a valuation of the Asserted Patent. Apple refused the offer. On March 25, 2025, the parties filed a joint discovery statement, setting out their respective positions on the discoverability of litigation-funding information, (Dkt. 154).

At the case management conference on April 2, 2025, the Court noted that the bulk of Apple's discovery requests targeting litigation-funding information were "way overbroad." (Dkt. 164-5, at 13:11–12). Pressed to explain why any litigation-funding information is possibly relevant to any claims or defenses in this action, Apple acknowledged, "We're shooting in the dark a little bit because we don't know what exists and what doesn't exist." (*Id.* at 7:11–13). The Court cast doubt on several of Apple's theories of relevance, specifically finding that Walia's declaration mooted any possible issues of standing or patent ownership. (Dkt. 164-5, at 3:23–4:4, 5:19–20, 20:21–24); *see* Walia Declaration, at ¶ 9. Then, the Court ordered the parties to brief issues of relevance and privilege as to two narrow categories of documents: communications with litigation funders relating to the Asserted Patent's (1) monetary valuation or (2) evaluation. (Dkt. 164-5, at 17:7–8 & 16–18, 19:19–20:5). Those were the only two categories of documents that the Court indicated "might conceivably be relevant." (Dkt. 164-5, at 5:21–23, 13:11–14).[1]

At Apple's request—and based on Apple's representation that a privilege log would "streamline" the briefing—the Court ordered Haptic to provide a limited litigation-funding privilege log covering only communications and documents relating to those two specified categories (valuation and evaluation of the Asserted Patent)—not Haptic's "every communication" with litigation funders nor its negotiation of any litigation-funding agreement. (Dkt. 164-5, at 13:2–

---

[1] Despite Apple's efforts to fault Haptic's privilege log, the Court did not order Haptic to log any documents or communications beyond those two specific categories. For example, Haptic's initial, non-substantive outreach communications with Siltstone (or any other litigation funders), negotiations of Haptic's funding agreement, are beyond the scope of documents the Court ordered should be logged. (Dkt. 164, at 16).

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

3, 17:19–24, 19:19–20:5). The Court also made clear that Apple should not expect Haptic's privilege log to specifically describe the contents of each document. (Dkt. 164-5, at 17:25–18:2 ("[T]he privilege log is not going to tell you what's in the document.")). Nor did the Court order Haptic to produce any documents to Apple. (Dkt. 164-5; *see also* Dkt. 164-7). To the extent Haptic's litigation-funding communications and related documents are protected work product, the Court agreed with Haptic that Apple has "no substantial need" for the information. (Dkt. 164-5, at 10:10–12 ("If it's work product, there's no substantial need.")).

Following the Court's guidance, Haptic conducted a search for documents and communications with litigation funders concerning the valuation or evaluation of the Asserted Patent, which uncovered sixteen documents (nine emails and their attachments). On April 9, 2025, Haptic served Apple with a privilege log describing those documents. (Dkt. 164-6). On April 24, 2025, while conducting a broader review of documents to create Haptic's general privilege log, Haptic identified two additional emails and their attachments. The next day, Haptic promptly provided Apple with a supplemental privilege log describing those newly discovered documents. (Ex. G). Haptic's privilege log—both the original and supplemental versions—provides all information required by the Court's April 2 ruling and Paragraph F of this Court's Civil Standing Order.[2] (*Id.*; Dkt. 164-6). To be thorough, Haptic's privilege log includes communications relating to its counsel's royalty analysis based on Apple's usage, even though that analysis does not assess the value or validity of the Asserted Patent itself. (Ex. G).

Notably, Apple's recently served privilege log, identifying 126 documents withheld as attorney-client privileged, provides less detail than Haptic's litigation funding log. For example, it states, "[e]mail chain reflecting information requested by counsel re patent prosecution" and "[d]raft document reflecting information for the purpose of obtaining legal advice with counsel re

---

[2] Civil Standing Order for District Judge Jacqueline Scott Corley, Paragraph F ("Privilege Logs must contain the following: (a) the subject matter or general nature of the document (without disclosing its contents); (b) the identity and position of its author; (c) the date it was communicated; (d) the identity and position of all addressees and recipients of the communication; (e) the document's present location; and (f) the specific privilege and a brief summary of any supporting facts.").

patent prosecution." (Ex. H). Apple cannot simultaneously contend its own log is sufficient while claiming Haptic's is deficient.[3]

On April 21, 2025, Apple filed the present motion to compel, which asks the Court to compel production of every document identified on Haptic's litigation-funding privilege log, plus "all other documents" relating to litigation funding. (Dkt. 164, at 16, 24).

## III.    ARGUMENT

The Court should deny Apple's motion. Haptic's confidential communications with litigation funders about the validity of the Asserted Patent or the value of this litigation are irrelevant to any claim or defense in this action. Moreover, those communications are protected work product because they reflect the mental impressions and legal theories of Haptic's counsel shared with litigation-funding entities in strict confidence and for the purpose of enabling Haptic to pursue anticipated litigation against Apple.

### A.    Litigation Funders Are Different from Banks.

Litigation is expensive. For many plaintiffs, pursuing litigation—no matter how meritorious—is impossible without financing to cover the costs of experts and other expenses. *See* Robert B. Fuqua, *How Litigation Funders Have Improved the Quality of Settlements in America*, HARV. NEGOT. L. REV. (Aug. 2020), https://journals.law.harvard.edu/hnlr/2020/08/how-litigation-funders-have-improved-the-quality-of-settlements-in-america/#_ftnref133.    Enter litigation funders. Unlike traditional banks, litigation funders can offer litigants flexible, nonrecourse loans that can be repaid once a plaintiff receives proceeds from the case. *Id.*; *see also* Cecile Cao, *Alternative Asset Class Investment Strategies*, SILTSTONE CAPITAL (Oct. 25, 2023), https://siltstonecapital.com/alternative-asset-class-investment-strategies (hereinafter, "Siltstone Investment Strategies") (explaining that Siltstone "provide[s] non-recourse funding to meritorious plaintiffs and in return, earn a preferred return and profits interest on any proceeds recovered from the funded matter"). Litigation funders thus specialize in evaluating the merits and risks of potential

---

[3] Although the documents Apple withheld as privileged are not squarely at issue, Apple's own privilege log—which is far less detailed than Haptic's litigation-funding privilege log—flies in the face of Apple's efforts to attack the sufficiency of Haptic's privilege descriptions.

litigation and often become a part of the litigation team. Before agreeing to fund any litigation, they typically engage in comprehensive due diligence. Fuqua, *supra*; *e.g.*, Siltstone Investment Strategies, *supra* ("[T]he investment and legal teams at Siltstone Capital employ a rigorous, bottom-up fundamental approach to identify and execute litigation finance investments."). This process necessarily requires litigants (and often their counsel) to discuss the merits of anticipated litigation with "vulnerable candor." *Design with Friends, Inc. v. Target Corp.*, 2024 WL 4333114, at *3 (D. Del. Sept. 27, 2024); *see also* Fuqua, *supra* (arguing that "uncertainty attached to sharing confidential information with litigation funders has obstructed the funding process").

Recognizing this reality of modern-day litigation, the vast majority of courts have refused discovery into litigation-funding information—whether on relevancy or privilege grounds. *Fulton v. Foley*, 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) ("[C]ourts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case."). As the Court observed during the April 2 hearing, there is little in the way of binding authority on these issues. Yet, by joining the majority view, this Court would contribute to growing certainty that confidential litigation-funding information is not discoverable—recognizing the realities of modern day litigation that require frank communications between litigants and litigation funders and, in turn, promoting access to justice for less capitalized plaintiffs. Thus, contrary to Apple's bare contention otherwise, there are compelling reasons to treat litigation funders differently from traditional banks or other third parties, as courts routinely do.[4]

### B.    <u>Haptic's Communications with Litigation Funders Are Irrelevant.</u>

Apple has not shown that any litigation-funding information is relevant to a claim or defense in this action. Instead, Apple's relevance arguments depend on pure speculation. Apple has admitted that it is "shooting in the dark" here. (Dkt. 164-5, at 7:11–13). The Supreme Court has

---

[4] Contrary to Apple's mischaracterization of the hearing transcript, Haptic did not admit that any of its communications with litigation funders "would not be categorically exempt from discovery if shared with a traditional bank." (Dkt. 164, at 7). In the portion of the transcript Apple cites, Haptic said nothing about relevance. (Dkt. 164-5, at 10:24–11:4). Rather, Haptic explained that communications with litigation funders are protected work product because litigation funders must evaluate a case's strength before funding it. In reality, Haptic never would have communicated with a traditional bank about the merits of anticipated litigation. The Supreme Court has

cautioned that Rule 26(b)(1)'s relevance requirement "should be firmly applied," particularly to avoid "annoyance, embarrassment, oppression, or undue burden or expense.'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citing Fed. R. Civ. P. 26(b)(1), and quoting Fed. R. Civ. P. 26(c)) (cleaned up)). Thus, "requested information is not relevant . . . if the inquiry is based on the party's mere suspicion or speculation." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990).

Litigation-funding information, too, is irrelevant unless "the requesting party has an actual basis for the relevancy of the information other than mere speculation or fishing." *Ashgari-Kamrani v. United Servs. Auto. Ass'n*, 2016 WL 11642670, at *4 (E.D. Va. May 31, 2016); *see also, e.g.*, *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 619 (D.N.J. 2019) ("Speculation does not justify discovery.") (citing *Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019)); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019) ("Mere speculation by the party seeking [litigation-funding] discovery will not suffice."); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, 2021 WL 10425630, at *4 (C.D. Cal. Mar. 26, 2021) ("Importantly, courts have declined to order production of litigation funding documents where, as in this instance, the moving party's justifications are based on speculation.") (collecting cases); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *1–2 (N.D. Cal. Jan. 7, 2019) (denying discovery into litigation-funding information because defendant's "assertions of potential bias and conflicts of interest are speculative"); *VHT, Inc. v. Zillow Grp.*, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) ("Nothing more than speculation supports Zillow's argument that VHT may lack standing or that VHT's litigation funder, if any exists, may be a necessary party, co-conspirator, or witness.").

In other words, Apple must present "some objective evidence" that its "theories of relevance are more than just theories." *V5 Techs.*, 334 F.R.D. at 312 (quoting *VHT*, 2016 WL 7077235, at *1–2). That requirement has special import in the context of discovery requests targeting litigation-funding information because learning "the details of [an opponent's] financing provides an unfair and unwarranted advantage." *Cirba Inc. v. VMWare, Inc.*, 2021 WL 7209447, at *2 (D. Del. Dec.

14, 2021) (internal quotation omitted); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984) (observing that the "observing that pretrial discovery "has a significant potential for abuse," which "may seriously implicate privacy interests of litigants and third parties," and courts have inherent authority to curb such abuse (cleaned up)). But here, Apple's broad requests for discovery into the particulars of Haptic's litigation funding are both irrelevant and entirely disproportionate to the needs of the case, particularly when weighed against the countervailing burden and prejudice that would accompany Haptic's disclosure of the requested information. Apple's motion falls far short of meeting its initial relevance burden. Beyond rank suspicion and hypotheticals, Apple has not articulated any cogent theory of relevance—let alone one supported by objective evidence.

### 1.    Valuation and Evaluation of the Asserted Patent.

Focusing first on the categories of documents on which the Court requested briefing: Haptic did not exchange any communications or documents with litigation funders providing a valuation of the Asserted Patent. (Ex. G). Although Apple contends that "logged documents appear to contain statements and representations that Haptic and/or its CEO made to third parties concerning the value of the Asserted Patent," that is simply untrue. (Dkt. 164, at 5). Not one entry on Haptic's privilege log mentions any valuation of the Asserted Patent itself—because no such communications exist. (Ex. G). The Court need not issue an advisory opinion on the relevance of imagined valuations of the Asserted Patent. *See, e.g.*, *GoTV Streaming, LLC v. Netflix, Inc.*, 2023 WL 4237609, at *13 (C.D. Cal. May 24, 2023) (denying discovery into a litigation funder's valuation of the asserted patent where the existence of any such valuation was speculative); *cf. Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016) (finding valuations of asserted patents relevant to damages where defendants had not received "any other documents regarding valuations of Plaintiff").

Ignoring the actual evidence (or lack thereof), Apple conflates communications about a potential infringement damages model with communications about the value of Asserted Patent itself. (Dkt. 164-5, at 5). But there is a world of difference between the two. Haptic articulated that distinction during the April 2 case management conference. (Dkt. 164-5, at 9:19–25). A patent

8

infringement damages model, turns not on the value of the patent itself but on extent of use by a single defendant. Although the Court did not order Haptic to log documents and communications relating to damages models, (*Id.* at 18:22–20:5), out of an abundance of caution and to give the Court a transparent picture of what documents actually exist, Haptic has logged an email and its attachment relating to a damages model prepared by Haptic's counsel and its non-testifying expert. (Ex. G).

Those documents are not relevant to any hypothetical negotiation: they reflect what Haptic's counsel and a non-testifying expert estimated Haptic could recover in anticipated litigation against Apple—not the amount that Haptic and a licensee "would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement." *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 15)**; (**Dkt. 164-5, at 5 (citing same). Those are completely different calculations. At most, litigation-funding agreements and related communications reflect "informed gambling on the outcome of the litigation." *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (D. Del. May 1, 2017). Thus, the damages analysis and related communications exchanged with Haptic's litigation funder "are so far removed from the hypothetical negotiation that they have no relevance." *Id.* Indeed, "any valuation for litigation funding has 'no more than a vague relationship (if that) with actual damages in patent litigation." *GoTV Streaming*, 2023 WL 4237609, at *13 (quoting plaintiff's brief and finding the argument persuasive); *cf. Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 581–83 (N.D. Cal. 2008) (finding licensing negotiations with third parties relevant to a reasonable royalty, if not privileged).

By the same token, and contrary to Apple's suggestion, an initial assessment of damages by Haptic's counsel and a non-testifying expert does not constitute "opinion testimony of qualified experts": neither Haptic's counsel nor the expert who assisted in preparing the damages analysis is offering any opinion testimony in this case. (Dkt. 164, at 5 (quoting *Ga.-Pac. Corp.*, 318 F. Supp. at 1120) (Factor 14)). Neither can Apple meet its burden of showing relevance by vaguely theorizing that non-testifying expert opinions "could also be relevant to any number of other

factors." (*Id.*) If Apple were correct that undisclosed expert opinions were relevant, the fair extension of its logic would be to allow patent owners to seek discovery into accused infringers' draft damages models prior to serving expert reports. That cannot be the case.

Equally speculative are Apple's arguments on the relevance of communications relating to infringement or the Asserted Patent's validity. To start, the Court did not indicate that any infringement analysis prepared by Haptic's counsel and shared with litigation funders is even potentially relevant. (Dkt. 164-5, at 5:21–23, 13:11–14, 18:22–20:5). Again, Haptic logged documents of that nature in the interest of transparency and out of an abundance of caution. (Ex. G). But even if this Court is inclined to reconsider the potential relevance of those documents, Apple fails to explain how either infringement or validity analysis prepared by and at the direction of Haptic's counsel would "bear directly on the issues that the jury must decide here." (Dkt. 164, at 5). Neither of these documents—or more broadly, any documents concerning litigation funding—are relevant to any witnesses' credibility. Apple's mere speculation that experts who will testify at trial may have had a hand in Haptic's counsel's early evaluation of the case (they did not) is insufficient to justify its broad discovery requests. (Ex. A ¶ 7). And Apple fails in any event to offer objective facts supporting its hypothesis that Mr. Boshernitzan's communications with litigation funders about Haptic's counsel's analyses of infringement or validity would somehow undermine (or bolster) his credibility. (Dkt. 164, at 5).

Moreover, Apple seeks to discover communications not just with Haptic's litigation funder, but also with any potential litigation funders. (Dkt. 164, at 5). Yet, as one of Apple's cited cases explained, "*potential* litigation funding is a side issue at best." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (quoting *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018)). Indeed, "communications with a litigation funder that do not result in an agreement" are generally irrelevant because they are "unreliable absent a final decision," lack context, and create substantial "concerns about the chilling effects of ongoing negotiations." *Trs. of Purdue Univ. v. STMicroelectronics, Inc.*, 2023 WL 11917023, at *3 (W.D. Tex. Jan. 18, 2023) (quotations omitted).

2.     Litigation-Funding Documents Beyond the Court's Logging Order.

Turning to further categories of documents on which the Court did *not* order briefing: the Court has already noted that Haptic's funding agreement with Siltstone and negotiations between Haptic and litigation funders are not relevant. (Dkt. 164-5, at 19:19–20:5). Indeed, litigation-funding "agreements are not patent licensing agreements and are not otherwise relevant to the hypothetical negotiation between the parties." *AVM Techs.*, 2017 WL 1787562, at *3. Likewise, the Court declined to order Haptic to log its funding agreement or prior communications with litigation funders (beyond the two specified categories). To the extent the Court entertains Apple's arguments on issues beyond the scope of the requested briefing, none of Apple's proffered theories of those documents' relevance holds water.

a.     Possible Trial Themes.

Apple speculates that Haptic will make "David v. Goliath" arguments at trial. (Dkt. 164, at 17–18). Even if Apple had any good-faith basis for its prediction of Haptic's trial strategy (and it has articulated none), that is no reason to order broad discovery into the details of litigation-funding arrangements. Since Apple already knows the identity of Haptic's litigation funder, "it has the necessary information to refute any such argument." *GoTV Streaming*, 2023 WL 4237609, at *13. Moreover, unlike the defendant in *Continental Circuits*—the sole case Apple has identified finding litigation funding relevant to refuting trial themes—Apple has not offered anything to support its hunch about the story Haptic will tell at trial. *Cf.* 435 F. Supp. 3d at 1019. Moreover, *Continental Circuits* only compelled the plaintiffs to identify any litigation funders, denying any further discovery on grounds of relevance and privilege. *Cf. id.* at 1024. Apple has already received the information compelled in *Continental Circuits*. And it has offered no authority for the extreme position that its desire to refute one imaginable trial theme would warrant discovery into "how much money Haptic received in litigation funding." (Dkt. 164, at 18).

b.     Credibility and Bias.

Apple offers several entirely speculative theories of relevance going to credibility or possible bias of witnesses. As one court aptly reasoned: "the financial backing of a litigation funder

is as irrelevant to credibility as the Plaintiff's personal financial wealth, credit history, or indebtedness." *Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019). Nonetheless, Apple contends that "the jury should know *whether* there are any discrepancies between the representations Mr. Boshernitzan has made about the value of the Asserted Patents to interested third parties." (Dkt. 164, at 18 (emphasis added)). In other words, Apple has no idea whether any such discrepancies could exist—acknowledging that this theory of relevance rests on pure speculation. The truth is that Mr. Boshernitzan made no representation to any litigation funder about the value of the Asserted Patent itself. (Ex. G; Ex. A ¶ 18). Rather, counsel has provided Haptic, and in turn, litigation funders, with an estimated damages model for *Apple*'s infringement. Nor has Apple articulated any good-faith basis for its suspicion otherwise. Apple further imagines that there could exist some "information that *may* show whether Mr. Boshernitzan's testimony is biased . . . , such as the receipt of substantial compensation (or even, substantial loss) based on whether Haptic succeeds in this litigation." (Dkt. 164, at 18 (emphasis added)). Again, Apple has no reason to believe such information exists—as evidenced by its conflicting theories that Mr. Boshernitzan might stand to gain (or somehow, maybe lose) money if Haptic's litigation succeeds. *See, e.g.*, *GoTV*, 2023 WL 4237609, at *13 (rejecting speculative argument that a "litigation funding arrangement could reveal bias," because "persons affiliated with Plaintiff may receive substantial compensation through the litigation"). Moreover, Apple does not explain why receiving money from a litigation funder for case success would impact Mr. Boshernitzan's credibility any differently than his potential to receive money directly from Apple for case success.

Even if Apple's speculative credibility and bias theories had roots in reality (they do not), those theories would not justify the broad discovery Apple seeks. Absent any "specific, articulated reason to suspect bias or conflicts of interest," litigation-funding information is generally irrelevant. *MLC Intell. Prop*, 2019 WL 118595, at *2; *NantWorks, LLC v. Niantic, Inc.*, 2022 WL 1500011, at *2 (N.D. Cal. May 12, 2022) (denying as irrelevant a motion to compel an interrogatory response identifying litigation-funding information where plaintiff "already filed a certification of interested

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

entities," and defendant offered no "specific, articulated reason to suspect bias or conflicts of interest" (quoting *id.*)).

c.    <u>Standing.</u>

The Court has already squarely addressed Apple's standing-based relevance arguments, (Dkt. 164-5, at 5:19–20, 20:21–24), and Apple has offered no reason to revisit them. *See, e.g.*, *Ashgari-Kamrani*, 2016 WL 11642670, at *4 (refusing discovery into litigation-funding information where plaintiffs "identified themselves as the only party with an ownership interest in the [asserted] patent"). Although Apple claims it "should be entitled to know who is directing the litigation in this case," (Dkt. 164, at 20), that reasoning falls flat here: Haptic is, and has always been, directing this litigation. Walia Declaration, at ¶ 9. Apple's mere suspicion that Siltstone or some other litigation funder could have some "future interest" in the Asserted Patent is groundless and does not provide a good-faith reason to compel discovery of Haptic's funding agreement with Siltstone. (Dkt. 164, at 19–20); *see, e.g.*, *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, 2022 WL 2805132, at *3 (E.D. Tex. June 29, 2022) (refusing discovery into litigation-funding information where defendant demanded litigation-funding information "under the guise of determining ownership of the Asserted Patents" in order "to engage in a fishing expedition"). Unlike in *Uniloc USA, Inc. v. Apple, Inc.*, Haptic has not granted any ownership interest in the Asserted Patent—present or future—to any litigation funder. *Cf.* 2020 WL 7122617, at *4–7 (N.D. Cal. Dec. 4, 2020) (plaintiffs lost standing because they defaulted on a loan secured by the asserted patent, triggering the vesting in the lender of a "'transferrable, sub-licensable, divisible, irrevocable' license to make, use, sell, or 'otherwise exploit" the patent); *see also Colibri*, 2021 WL 10425630, at *3 (denying litigation-funding discovery because "Defendant offers no evidence or support suggesting that Plaintiff here lacks standing like the plaintiffs in *Uniloc*").

Likewise, Apple misplaces its reliance on *Nimitz*. In its unpublished decision in *In re Nimitz Techs. LLC*, the Federal Circuit denied a mandamus petition challenging the Delaware district court's Chief Judge's standing order requiring disclosure of limited litigation-funding information—specifically (1) the identity of litigation funders; (2) whether the funder has authority

13

to control litigation or settlement decisions, and if so, the terms of that control; and (3) a "brief description" of the funder's financial interest. 2022 WL 17494845, at *1 (Fed. Cir. Dec. 8, 2022) (quoting Chief Judge Connolly's Standing Order Regarding Third-Party Litigation Funding Arrangements (D. Del. Apr. 18, 2022)). Neither the Federal Circuit nor Chief Judge Connolly below discussed whether litigation-funding information was relevant to any claim or defense (or privileged). *Id.* at *2; *see generally Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 173338396 (D. Del. Nov. 30, 2022). Rather, Chief Judge Connolly explained that the *limited* litigation-funding information required by his standing order was relevant to the identities of the real parties in interest and counsel's compliance with the Rules of Professional Conduct and court orders. *Nimitz*, 2022 WL 173338396, at *26. Then, the Federal Circuit narrowly ruled that the "drastic and extraordinary remedy" of a mandamus writ was not the appropriate mechanism to invoke privilege as to litigation-funding information—since the petitioner had the option to submit the information to the district court under seal or *in camera*. *Nimitz*, 2022 WL 17494845, at *2.

None of Chief Judge Connolly's concerns are present here. In sharp contrast to *Nimitz*, where the plaintiff resisted compliance with the court's standing order as part of a scheme to hide the true owner of the asserted patent, *Nimitz Techs. LLC v. CNET Media, Inc.*, 2023 WL 717441 (D. Del. Nov. 27, 2023), Haptic owns the asserted patent in full. And Apple has no good-faith basis for its suspicions otherwise. Quite the opposite: Apple has already obtained at least two of the three categories of information required by Chief Judge Connolly's standing order: (1) Siltstone is Haptic's litigation funder; and (2) Siltstone has no control over this action. Walia Declaration ¶¶ 6, 8–9. And Haptic has offered Apple a verified interrogatory response which would resolve Apple's remaining (pretextual) standing concerns—an offer Apple refused.

### 3.    Apple's Caselaw is Unpersuasive.

None of Apple's caselaw on relevance is persuasive. (Dkt. 165, at 5–6). For example, in *Impact Engine, Inc. v. Google LLC*, an outlier case, the district court determined without analysis that litigation-funding agreements and related documents are relevant to the value of the asserted patents, but reserved ruling on plaintiff's privilege objections. 2020 U.S. Dist. LEXIS 145636, at

*4 (S.D. Cal. Aug. 12, 2020). Beyond mere "courts have done this" analysis—which this Court has observed is unpersuasive, (Dkt. 164-5, at 15:18–16:1)—*Impact Engine* offers no deeper reason for its outcome. Even further from the mark is *Intel Corp. v. Protection Cap. LLC*, which involved discovery relating to a third party's financial backing of the purchase of the asserted patents. 2013 WL 12313348, at *1, 3 (S.D. Cal. Oct. 2, 2013). The district court found that information relating to the decision to invest in the asserted patents was relevant to the value of those patents. *Id.* at *3. But neither *Intel*'s reasoning nor its outcome maps to this case. Here, in contrast, the issue is whether information relating to a third party's actual or potential investment in *this litigation* is relevant to the value of the Asserted Patent (it is not). Although Apple cites *Intel* throughout its brief, it nowhere mentions that key factual distinction. (Dkt. 164, at 6, 7, 17, 21). *In re Google Litig.* is similarly off-base: it involved discovery from a third-party venture capital firm that had invested in two of the defendants—not in the litigation. 2011 WL 6113000, at *3 (N.D. Cal. Dec. 7, 2011). Apple's reliance on those distinguishable cases reflects the dearth of authority and logic supporting its position.

In *Acceleration Bay LLC v. Activision Blizzard, Inc.*, adopting a special master's recommendation, Judge Andrews of the Delaware district court ordered a plaintiff to produce documents it gave to a litigation funder *before* entering any written confidentiality agreement. 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018). Judge Andrews's entire analysis of relevance consisted of nine words: "I agree with Defendants that the communications are relevant." *Id.* That reasoning is far from convincing. At best, *Acceleration Bay* is an outlier decision that depends on its particular facts, which is why courts—including Judge Andrews himself—have consistently refused to extend it. *See, e.g.*, *TC Tech. LLC v. Sprint Corp.*, 2018 WL 6584122, at *5 (D. Del. Dec. 13, 2018) (Andrews, J.) ("I think Sprint reads *Acceleration Bay* too broadly."); *Valsartan*, 405 F. Supp. 3d at 618 (finding *Acceleration Bay*'s relevance analysis unpersuasive); *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269, at *1 (D. Del. June 12, 2020) ("*Acceleration Bay* does not hold (as no case should) that [litigation-funding] materials are always relevant, without any consideration of additional factors."); *Colibri*, 2021 WL 10425630, at *4 (collecting cases

disagreeing with *Acceleration Bay*, emphasizing that the relevance of litigation-funding information, if any, requires case-by-case analysis of the particular circumstances, and finding defendant failed to meet its initial burden of showing relevance).

No more helpful is *Cobra International, Inc. v. BCNY International, Inc.*, where the district court found that a funding agreement was discoverable, without any analysis (or mention of work-product protection). 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013). The *Cobra* court appeared to accept the defendant's argument that the funding agreement was relevant to ownership of the asserted patent and standing—relevance theories this Court has already rejected. *Cobra*'s barebones decision is therefore unpersuasive. Apple's remaining decisions do not even involve discovery into litigation-funding information. *Cf. Fresenius Med. Care Holding Inc. v. Baxter Int'l Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004); *Lexington Luminance LLC v. Feit Elec. Co.*, 2020 WL 10052404, at *3 (C.D. Cal. 2020); *Impact Engine, Inc. v. Google LLC*, 2020 WL 2745230, at *4 (S.D. Cal. May 26, 2020); *Phoenix*, 254 F.R.D. 568, 581–83.

*        *        *

In sum, Apple has failed to offer any nonspeculative theory of relevance and, thus, fallen far short of meeting its initial relevance burden. For that reason alone, the Court should deny Apple's motion to compel. For the same reason, Apple is plain wrong that it has any "right to test" Haptic's privilege claims or demand that Haptic further supplement its (already overinclusive) privilege log with irrelevant documents. (Dkt. 164, at 20–21); *see, e.g.*, *Colibri*, 2021 WL 10425630, at *4.

**C.    Haptic's Communications with Litigation Funders Are Privileged.**

Even if any communications with litigation funders were relevant and proportional to the needs of the case, they are protected work product and privileged under the common-interest doctrine.[5]

---

[5] Contrary to Apple's contention, Haptic's privilege log describes each document with more than enough detail to permit assessment of the privilege claims. *Taction Tech.*, 2022 WL 4611826, at *4 (citing Fed. R. Civ. P. 26(b)(5)(A)). To the extent the Court finds any additional detail would be helpful to evaluate Haptic's privilege assertions, that would not be grounds for waiver. *See*

1.    <u>Attorney Work-Product Protection.</u>

The work-product "doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system." *United States v. Nobles*, 422 U.S. 225, 238 (1975) (holding work-product protection applies to materials prepared by attorneys' agents). "In short, the work-product doctrine upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies—without their adversaries invoking the discovery process to try to pry into the litigators' minds and free-ride off them." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021). A recent federal court decision collecting authority on this issue succinctly explained why litigation-funding materials fall within the work-product doctrine:

> In litigation finance, one of those realities is that financiers need to evaluate the strength of a case before agreeing to fund it. These internal discussions leave a revealing trail of mental impressions, legal theories, and strategic notes—all created as confidential internal documents or sent under nondisclosure agreements, and so written with vulnerable candor. If the work-product doctrine did not protect these records, then plaintiffs who got litigation finance would need to expose these confidential attorney impressions to their opponents. That would chill lawyers from discussing a pending case frankly. The work-product doctrine was created to prevent that result.

*Design with Friends, Inc. v. Target Corp.*, 2024 WL 4333114, at *3 (D. Del. Sept. 27, 2024) (citing *Nobles*, 422 U.S. at 238, *Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015), and *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

The Ninth Circuit has adopted the "because of" standard to analyze work product: any document that "can fairly be said to have been prepared or obtained because of the prospect of litigation" is work product under Rule 26(b)(3). *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)* ("*Torf*"), 357 F.3d 900, 907 (9th Cir. 2004) (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8 Fed. Prac. & Proc. § 2024 (2d ed. 1994)); *ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 485 (9th Cir. 2018). That standard "does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting any "*per se* waiver rule" for failure to timely produce a privilege log).

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Torf*, 357 F.3d at 907 (cleaned up). "It is a broader test than the 'primary purpose' test because it looks only at causal connection, and not a 'primary' reason." *In re Grand Jury*, 23 F.4th at 1092 (quotation omitted).

No doubt, litigation-funding agreements, underlying negotiations, and communications facilitating litigation funders' evaluation of potential cases, by nature, only exist "because of" anticipated litigation. *See, e.g.*, *Odyssey Wireless*, 2016 WL 7665898, at *5 (collecting cases and reasoning that litigation-funding materials "were created because litigation was expected," which "is sufficient to bring them within the protections of the work-product doctrine"); *Taction Tech., Inc. v. Apple Inc.*, 2023 WL 4611826, *4–6 (S.D. Cal. 2023) (finding work-product immunity applied to litigation-funding documents, the immunity was not waived, and the defendant requesting the information had no substantial need for it). For example, in *Continental Circuits*— which Apple selectively relies on for its relevance discussion—the district court found that litigation-funding agreements are protected work product, explaining that "any business-sustaining purpose of the litigation funding agreements in this case is 'profoundly interconnected' with the purpose of funding the litigation." 435 F. Supp. 3d at 1021.

The same is true of the litigation-funding documents and communications at issue here: all these documents were created because of Haptic's anticipated suit against Apple for infringing the Asserted Patent. Most if not all the substantive analyses shared with Haptic's litigation funders were prepared in the first instance by Haptic's counsel (sometimes with counsel's agents) for the purpose of assessing anticipated litigation against Apple. Those documents had no conceivable business purpose (save for the business of Haptic's counsel, which is litigation) and would therefore satisfy even the narrower "primary purpose" test, while easily clearing the Ninth Circuit's broader "because of" test.

As to documents or communications created in pursuit of obtaining litigation funding— including the funding agreement itself—that purpose necessarily dovetails with the goal of pursuing

the anticipated litigation. Any "business" purpose of such documents is intertwined with, if not tangential to, Haptic's pursuit of anticipated litigation. *See Cont'l Cirs.*, 435 F. Supp. 3d at 1020–21 ("[E]ven if Defendants are correct that the funding agreements have an additional business-support purpose, this does not defeat work product protection."); *see also Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 735 (N.D. Ill. 2014) ("Materials that contain counsel's theories and mental impressions created to analyze [the plaintiff's] case do not necessarily cease to be protected because they may also have been prepared or used to help [the plaintiff] obtain financing."); *see also Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5 (W.D. Pa. Jan. 18, 2018) ("Defendants' arguments premised on the non-legal nature of Plaintiff's relationships with [litigation funders] are unavailing. Even if the Court were to fully credit this argument and consider the relationships to be commercial, the materials nonetheless fall within work-product immunity because they were communications with Plaintiff's agents and in anticipation of litigation."). Indeed, work-product protection applies broadly to litigation-funding materials where, as here, they are prepared "with the intention of coordinating potential investors to aid in future possible litigation." *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011).

In arguing that Haptic did not share its counsel's work product with litigation funders for the purpose of seeking legal advice from those funders, Apple attempts to sidestep the Ninth Circuit's "because of" test. (Dkt. 164, at 10). Ignoring the weight of caselaw, Apple focuses on mostly out-of-Circuit decisions, many of which are either unrelated to litigation funding or ***apply the "primary purpose" test rejected by the Ninth Circuit***. (Dkt. 164, at 8–10, 20–21). None are persuasive.

*Acceleration Bay*, again, is an extreme outlier, which depended on its particular facts. 2018 WL 798731, at *2–3; *see Valsartan*, 405 F. Supp. 3d at 617 n.7 (collecting cases, and noting that "the weight of recent authority" has afforded work-product protection to litigation-funding materials).

Critically, *Acceleration Bay*—like others of Apple's cited cases—applied the "primary purpose" test, which is much narrower than the Ninth Circuit's "because of" standard. 2018 WL 79831, at *1–2; *see also United States v. Heine*, 2016 WL 6138245, at *1–2 (D. Or. Oct. 21, 2016) (applying the "primary purpose" test); *Mw. Athletics & Sports All. LLC v. Ricoh USA, Inc.*, 2020 WL 5554361, at *3, 6 (E.D. Pa. Sept. 16, 2020) (same, and reserving ruling on privilege). "In the context of litigation funding, the choice of test may be outcome-determinative," especially with respect to dual-purpose documents. *Carlyle*, 2015 WL 778846, at *8. Not only did Apple omit that context from its discussion of cases applying the narrower "primary purpose" test, but it chose not to mention the Ninth Circuit's binding "because of" standard at all. (Dkt. 164).

Then, *Cobra*'s complete analysis of "privilege"—without specifying which privilege or citing any authority—consisted of the bare conclusion that a litigation funding agreement was "not privileged." 2013 WL 11311345, at *3. Likewise, *AIPI, LLC v. Netflix, Inc.* discussed only attorney-client privilege, and in cursory fashion, with no citations to caselaw. Order, No. 1:24-mc-00002-LMB-WEF (E.D. Va. Apr. 18, 2025), ECF No. 96. In *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, the district court ruled that a non-party's unsupported assertion of work-product protection fell short of its burden of persuasion, and even then, declined to order any discovery into litigation-funding materials beyond valuations of the asserted patent. 2023 WL 4750822, at *7–8 (W.D.N.C. July 24, 2023). Even further off-point, *Intel* involved third-party discovery requests to investors in the asserted patents—not in litigation—with no discussion of work-product protection. 2013 WL 12313348, at *1, 3. Those cases are all distinguishable and wholly unpersuasive.

The remainder of Apple's cases have nothing to do with litigation funding. *Cf. Prater v. Consol. Rail Corp.*, 272 F. Supp. 2d 706, 713 (N.D. Ohio 2003); *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, 2011 WL 2181692, at *6 n.3 (N.D. Cal. June 2, 2011); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1243 (D. Or. 2017); *Becker v. Willamette Cmty. Bank*, 2014 WL 2949334, at *3 (D. Or. June 30, 2014); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 515 (D. Conn. 1976); *Binks Mf. Co. v. Nat'l Presto Indus., Inc.*,

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

709 F.2d 1109, 1118–19 (7th Cir. 1983); *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015).

2.    <u>No Waiver.</u>

Haptic did not waive work-product protection by disclosing documents to litigation funders in strict confidence. Work-product protection is not "easily waived." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120 (9th Cir. 2020); *see also Odyssey Wireless*, 2016 WL 7665898, at *6 ("Attorney work-product protection is not automatically waived upon disclosure to third parties." (quoting *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014))). Rather, "disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or 'has substantially increased the opportunities for potential adversaries to obtain the information.'" *Sanmina*, 968 F.3d at 1121 (quotation omitted); *Waymo LLC v. Uber Techs.*, 2017 WL 2485382, at *12 (N.D. Cal. June 8, 2017) (Corley, J.) (explaining that "waiver of attorney work-product protection requires more than the disclosure of confidential information, it requires an act inconsistent with the adversary system." (quotation omitted)).

Thus, courts routinely find that "the attorney work-product protection that attaches to litigation financing documents is not waived when these documents are disclosed to third-party litigation funders." *Odyssey*, 2016 WL 7665898, at *6 (collecting authority). That is because "possible or actual litigation funders . . . have an inherent interest in maintaining the confidentiality of potential clients' information." *United States v. Ocwen Loan Serv., LLC*, 2016 WL 1031157, at *6 (E.D. Tex. Mar. 15, 2016); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) (same); *Hardin v. Samsung Elecs. Co.*, 2022 WL 14976096, at *2 (E.D. Tex. Oct. 25, 2022) (same); *see also Mondis Tech.*, 2011 WL 1714304, at *3 ("[A]lthough these documents [regarding litigation funding] were disclosed to third parties, the disclosures do not create a waiver because they were disclosed subject to [nondisclosure] agreements and thus did not substantially increase the likelihood that an adversary would come into possession of the materials."). Despite Apple's attempted sleight-of-hand, the relevant "adversary" in this context is

Apple—not any litigation funder. (Dkt. 164, at 15 (citing *SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006), and *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 390 (D.N.J. 1990))); *see Sanmina*, 968 F.3d at 1121 (specifying that waiver of work-product protection occurs only upon disclosure "to an adversary *in litigation*").

At bottom, Haptic exchanged and created work product with litigation funders only after entering broad nondisclosure agreements ensuring that those litigation funders would not allow any potential adversary (namely, Apple) to obtain those documents. There can be no waiver of work-product protection under those circumstances. The Court's privilege analysis can end here.

Even if Haptic's disclosure in strict confidence of work product to litigation funders could have somehow waived protection, the common-interest doctrine would nonetheless prevent any waiver. The common-interest doctrine "prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *7 (N.D. Cal. Jun 8, 2017) (Corley, J.). In other words, the doctrine applies where "it may reasonably be inferred that resultant disclosures are intended to be insulated from exposure beyond the confines of the group" *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (quotation omitted). "Disclosure to a person with interest common to that of attorney or client is not inconsistent with intent to invoke work product doctrine's protection and would not amount to waiver." *Cal. Sportfishing*, 299 F.R.D. at 645 (quoting *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981)) (cleaned up). "In the context of work product, common interest is more broadly construed to include disclosure to third parties." *Odyssey*, 2016 WL 7665898, at *6 (quoting *Bofi Fed. Bank v. Erhart*, 2016 WL 4150983, at *4 (S.D. Cal. Aug. 5, 2016)).

Here, Haptic's nondisclosure and common-interest agreements with litigation funders—entered prior to any disclosure or creation of protected work product—evince a clear purpose of jointly exploring and potentially pursuing anticipated litigation.[6] The circumstances of Haptic's disclosure of protected work product to litigation funders were consistent with an expectation that

---

[6] To be clear, Haptic does not argue that the presence of a nondisclosure agreement alone creates privilege. (Dkt. 164, at 14–15). Rather, as discussed, Haptic's nondisclosure agreements with litigation funders are strong evidence refuting Apple's assertions of waiver and demonstrating a common legal interest.

those documents would remain confidential. *See, e.g.*, *Cont'l Cirs.*, 435 F. Supp. 3d at 1022 (collecting authority and observing "work product protection for litigation funding documents is not waived when such documents contain confidentiality provisions and are disclosed to litigation funders with common interests").

Although Haptic and potential litigation funders may have been counterparties with respect to the negotiation of specific funding terms, by virtue of their nondisclosure and common-interest agreements, Haptic and each litigation funder had common legal interests with respect to the outcome of this litigation. *See, e.g.*, *Devon It, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012) (holding that a litigant and litigation funder shared "a common interest in the successful outcome of the litigation," which prevented waiver of attorney-client privilege and work-product protection over documents disclosed under a nondisclosure agreement); *Walker Dig., LLC v. Google, Inc.*, 2013 WL 9600775, at *1 (D. Del. Feb. 12, 2013) (similarly finding a litigant's common-interest agreement with a litigation funder prevented waiver of any privilege). In that way, the facts here are unlike those in *Waymo LLC v. Uber Techs.*, 2017 WL 2485382 (N.D. Cal. June 8, 2017) (Corley, J.). There, in a non-litigation-funding case, this Court concluded that a nonbinding acquisition term sheet between the defendant and a third party did not establish a common legal interest because none of the term sheet's purposes was "in furtherance of some common interest in defending against potential litigation." *Id.* at *9–11. Not so here. Haptic's nondisclosure and common-interest agreements with litigation funders all expressly contemplated those funders' financial support of Haptic's anticipated litigation against Apple.

Also distinguishable is *Leader Technologies, Inc. v. Facebook, Inc.*, where the district court found a magistrate judge's decision allowing discovery of certain litigation-funding materials was not clearly erroneous—but did not analyze the work-product doctrine. 719 F. Supp. 2d 373, 375–77 (D. Del. 2010). Notably, *Acceleration Bay*'s discussion of the common-interest doctrine depended heavily on its uncommon and easily distinguishable facts: there, the parties did not enter into "any written agreement" indicative of a common interest. 2018 WL 798731, at *3. Cabining his own decision in a later case, Judge Andrews explained that *Acceleration Bay* "did not set a firm

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

rule that parties must have a written agreement or have filed suit to share a legal interest. Rather, I merely considered the lack of an agreement or suit as evidence of the lack of a shared interest." *TC Tech.*, 2018 WL 6584122, at *5. Here, of course, Haptic had written agreements evidencing a common legal interest with each of the litigation funders with whom Haptic explored the pursuit of its anticipated litigation against Apple.

### 3.    No Substantial Need.

The Court has indicated that Apple has "no substantial need" for any litigation-funding information. (Dkt. 164-5, at 10:10–12)). Nor has Apple, at any point, attempted to demonstrate any need for litigation-funding information—let alone the "substantial need" and "undue hardship" required by Rule 26(b)(3)(A)(ii).

*          *          *

Thus, Haptic's litigation-funding materials, even if somehow relevant, are protected work product and not discoverable.

## IV.    **CONCLUSION**

For these reasons, the Court should deny Apple's motion to compel in total.

Dated: April 28, 2025

By:  */s/ Connor Cohen*
Davida Brook (SBN 275370)
dbrook@susmangodfrey.com
Connor Cohen (SBN 354686)
ccohen@susmangodfrey.com
Xue Li (SBN 333826)
ali@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Brian D. Melton (Admitted *pro hac vice*)
bmelton@susmangodfrey.com
Rocco Magni (Admitted *pro hac vice*)
rmagni@susmangodfrey.com
Ace M. Factor (Admitted *pro hac vice*)
afactor@susmangodfrey.com

24

SUSMANGODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Benjamin Manne (Admitted *pro hac vice*)
bmanne@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
Facsimile: (206) 516-3883

*Counsel for Plaintiff Haptic, Inc.*

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record on April 28, 2025.

*/s/ Connor Cohen*
Connor Cohen

HAPTIC'S OPPOSITION TO APPLE'S MOTION TO COMPEL
Case No.: 3:24-cv-02296-JSC