Roger A. Denning (SBN 228998)
denning@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Jeff H. Burton (SBN 328305)
jburton@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: 858-678-5070 / Fax: 858-678-5099

Katherine D. Prescott (SBN 215496)
prescott@fr.com
Jeanel N. Sunga (SBN 333815)
sunga@fr.com
Claire Chang (SBN 341420)
cchang@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: 650-893-5070 / Fax: 650-839-5071

*Additional Counsel listed on Signature Page*

*Attorneys for Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

HAPTIC, INC.,

Plaintiff,

v.

APPLE INC.

Defendant.

Case No. 3:24-cv-02296-JSC

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMMUNICATIONS AND AGREEMENT(S) WITH THIRD PARTIES ABOUT THE ASSERTED PATENT**

Date: May 29, 2025
Time: 10:00 a.m.
Dept: Courtroom 8
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Haptic Has No Valid Basis To Withhold the Logged Documents and Should Produce Them. ..... 2

1. Relevance: The Logged Documents Are Relevant and Probative to Issues in this Case and Are Likely To Lead to Other Discoverable Information. ..... 2

2. Privilege: Haptic Fails Meet Its Burden of Proving that the Documents It Withheld Are Privileged. ..... 8

B. Haptic Should Produce or Log the Remaining Responsive Documents It Is Withholding. ..... 12

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731 (D. Del. Feb. 9, 2018) ........ 5

*AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562 (D. Del. May 1, 2017) ........ 6

*Benitez v. Lopez*, 2017 WL 11526431 (E.D.N.Y. Oct. 13, 2017) ........ 14

*Biegas v. Quickway Carrier, Inc.*, 573 F.3d 365 (6th Cir. 2009) ........ 9

*In re Cathode Ray Tube Antitrust Litig.*, 2022 WL 20611260 (N.D. Cal. Oct. 14, 2022) ........ 5

*Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014 (D. Ariz. 2020) ........ 6

*Correct Transmission, LLC v. Juniper Networks Inc.*, No. 21-cv-09284-RFL (SK), Dkt. No. 257 (N.D. Cal. Apr. 29, 2025) ........ 14

*Design with Friends, Inc. v. Target Corp.*, 2024 WL 4333114 (D. Del. Sept. 27, 2024) ........ 7

*Devon It, Inc. v. IBM Corp.*, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ........ 12

*Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822 (W.D.N.C. July 24, 2023) ........ 13

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899 (N.D. Cal. 2023) ........ 10

*Fulton v. Foley*, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ........ 7

*Ga. Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (SDNY 1970) ........ 3

*GoTV Streaming, LLC v. Netflix, Inc.*, 2023 WL 4237609 (C.D. Cal. May 24, 2023) ........ 6

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) ........ 10

*Impact Engine, Inc. v. Google LLC*,
2020 U.S. Dist. LEXIS 145636 (S.D. Cal. Aug. 12, 2020) ........................................ 7

*Intel Corp. v. Protection Cap. LLC*,
2013 WL 12313348 (S.D. Cal. Oct. 2, 2013) ........................................ 5

*McCowen v. Trimac Trans. Servs. (W.), Inc.*,
2015 WL 5184473 (N.D. Cal. Sept. 4, 2015) ........................................ 3

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*,
967 F.2d 980 (4th Cir. 1992)........................................ 9

*Pres. Techs. LLC v. MindGeek USA, Inc.*,
2020 WL 10965161 (C.D. Cal. Dec. 18, 2020) ........................................ 3, 7

*Trs. of Purdue Univ. v. STMicroelectronics, Inc.*,
2023 WL 11917023 (W.D. Tex. Jan. 18, 2023)........................................ 6

*United Access Techs., LLC v. AT&T Corp.*,
2020 WL 3129269 (D. Del. June 12, 2020)........................................ 5

*V5 Techs. v. Switch, Ltd.*,
334 F.R.D. 306 (D. Nev. 2019)........................................ 8

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
405 F. Supp. 3d 612 (D.N.J. 2019) ........................................ 8

*Vaporstream, Inc. v. Snap Inc.*,
2020 WL 978731 (C.D. Cal. Feb. 28, 2020)........................................ 4

*Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*,
2011 WL 1599646 (N.D. Cal. Apr. 27, 2011) ........................................ 13

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 2694191 (N.D. Cal. June 21, 2017) ........................................ 5, 9, 12

## I. INTRODUCTION

Contrary to the far-reaching policy-based arguments in Haptic's opposition, the issue for the Court here is a straight-forward application of well-established guidelines for assessing whether information is discoverable. This dispute is not theoretical, and Apple requests this Court decline to follow Haptic's urging to re-write the Federal Rules by exempting from discovery anything shared with, or even relating to, litigation funders. Rather, Apple requests that this Court decide the specific issues before it—whether Haptic complied with its discovery obligations in this case when it elected to withhold relevant documents simply because Haptic unilaterally labeled them as related to "litigation funding." Because Haptic did not, Apple respectfully requests that the Court grant Apple's Motion.

As to the documents listed on Haptic's privilege log, Haptic should be required to produce them. Haptic's own descriptions show they are relevant to infringement, validity, and damages—all issues the jury will decide. And just as documents valuing and evaluating the assets of a company provided to a bank to obtain a loan would not be privileged, these evaluations, prepared for and sent to litigation funders, are not privileged because they were prepared because Haptic needed funding to pursue its or its funder's business aims.

As to the documents Haptic has refused to produce or log, Haptic should be required to produce them or provide a privilege log that legally supports its refusal to do so. Haptic's opposition makes clear that its interpretation of relevance and privilege deviate from the Federal Rules and established caselaw, and that it is withholding additional relevant documents. As it is unclear what criteria Haptic used to decide what documents to log (other than its own interpretation of "valuations and evaluations"), Apple should be allowed to test Haptic's relevance and privilege arguments with a privilege log covering ***all*** documents withheld as relevant to "litigation funding," as is required for any other document withheld during discovery.

## II. ARGUMENT

Apple seeks two specific forms of relief in this motion. First, Apple requests that the Court order Haptic to produce the documents listed on its privilege log[1] because these are relevant to key issues in this case, including damages and validity, and neither Haptic's log nor its opposition substantiates its privilege claims. Second, Apple requests that the Court order Haptic to produce or log any other relevant communications or documents Haptic withheld as being related to its litigation funders. Apple should be afforded an opportunity to test Haptic's claims of relevance and privilege about such communications in view of descriptions of those documents.

### A. Haptic Has No Valid Basis To Withhold the Logged Documents and Should Produce Them.

#### 1. <u>Relevance</u>: The Logged Documents Are Relevant and Probative to Issues in this Case and Are Likely To Lead to Other Discoverable Information.

Haptic fails to explain why any of the logged documents are not relevant. Haptic's own descriptions of the logged documents confirm that they relate to at least damages and validity, and Haptic's attempts to distinguish these documents as irrelevant have no legal or factual support.

<u>Valuation/Damages</u>. As revealed for the first time in its opposition brief (at 1), Haptic hired a third-party expert to evaluate the potential for damages in this case in order to negotiate a funding agreement with a litigation funder. This damages analysis appears to be what is referenced in Log Nos. 14–16 of Haptic's privilege log and was provided to Haptic's litigation funder, Siltstone Capital. Such documents are relevant to damages, which the jury will decide.

Haptic argues that the analysis prepared by its expert addresses the damages "Haptic could recover in anticipated litigation against Apple—not the amount Haptic and a licensee 'would have agreed upon (at the time infringement began) if both had been reasonably and voluntarily trying to reach an agreement.'" Opp. at 9 (quoting *Ga. Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). This argument fails. For one, under patent damages law, the

[1] This includes the two additional communications Haptic identified after Apple's opening brief, which are similar in substance to Haptic's previously-logged items. Haptic raises no arguments as to why these communications differ from those previously logged, so there is no reason to treat them differently.

damages Haptic expects to receive in litigation ***are*** a reasonable royalty —which is based on an analysis of what "Haptic and a licensee 'would have agreed upon (at the time infringement began) if both had been reasonably and voluntarily trying to reach an agreement.'" Opp. at 9 (citing *Ga. Pac. Corp.* 318 F. Supp. at 1120). Thus, contrary to Haptic's position, there is no difference between the analysis Haptic is withholding and the analysis the jury will be asked to perform. And even if there were any difference, Haptic's expectations for damages at trial would be a probative (potentially determinative) data point for the reasonable royalty it would have voluntarily agreed to in a hypothetical negotiation—i.e., *Georgia-Pacific* Factor 15. Thus, the analysis itself is relevant and likely to lead to the discovery of further relevant information—for example, information regarding the factual underpinnings of the analysis. *See, e.g.*, *Pres. Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965161, at *6 (C.D. Cal. Dec. 18, 2020) (surveying caselaw and concluding that documents relating to the negotiation of a litigation funding documents "are relevant to assessing the value of the disputed patents in this suit"); *see also McCowen v. Trimac Trans. Servs. (W.), Inc.*, 2015 WL 5184473, at *2 (N.D. Cal. Sept. 4, 2015) (Corley, M.J.).

Haptic also tries to draw an artificial distinction between the "value" of the patent and an analysis of potential damages. Opp. at 8–9. Again, this is a distinction without a difference. The "value" Haptic attributes to the Asserted Patent depends on Haptic's ability to monetize that patent, including the potential damages it contemplated receiving from Apple in this suit; and the value the litigation funder attributed to the patent depended on its hope for a financial return. Moreover, the damages Haptic will claim in this case will depend on how Haptic itself—one of the two parties sitting at the negotiating table—valued its patent (i.e., *Georgia-Pacific* Factor 15). Therefore, whether Haptic would describe these withheld documents as relating to "valuation" or its included concept of an estimation of recovery at trial, they are relevant and discoverable.

At minimum, the logged items relate to *Georgia-Pacific* Factor 14: the opinion of experts. Haptic's only argument for *Georgia-Pacific* Factor 14 is that it does not intend to rely on testimony from this previously-hired expert at trial. Haptic cites no authority as to why that

matters. It doesn't. An expert's estimation of damages and value are relevant to what an expert thinks about the patent, regardless as to whether that expert will offer testimony at trial.

Evaluations. Also revealed for the first time in its opposition brief (at 1), Haptic has documents related to a survey of the "state of the art" at the time of the purported invention of the Asserted Patent prepared shortly before it sought litigation funding. This analysis appears to be the subject of at least Log Nos. 1–5 of Haptic's privilege log. This survey and any statements Haptic made related to it are relevant to at least validity, noninfringement, and damages in this case.

On validity and noninfringement, a report on what Haptic acknowledged was the "state of the art" would likely directly reference prior art and lead to information related to what Haptic viewed as the difference between the Asserted Patent over prior art—i.e., the invention. Furthermore, to the extent Haptic's infringement theory relies on an overbroad reading of its patent claims that conflicts with its own validity analysis and potentially ensnares prior art, Apple should be given a chance to assess this tension and legal impropriety in its defense. Mot. at 5. Finally, documents related to the state of the art are also relevant to damages because the proper analysis thereof should be based on incremental value the Asserted Patent contributes over what was available in the state of the art. *See Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *8–*9 (C.D. Cal. Feb. 28, 2020) (denying motion *in limine* and finding prior art patents "relevant to the issues of damages under an analysis of the Georgia-Pacific factors.").

Haptic also offers no rebuttal to the legal foundation of relevance that Apple outlined in its brief. Instead, Haptic's only argument is that Apple cannot substantiate its claim that emails associated with the survey are relevant to Mr. Boshernitzan's credibility because Apple does not know, exactly, what Mr. Boshernitzan said in those emails (they were withheld). However, the information in Haptic's log provides sufficient factual basis for Apple to believe that Mr. Boshernitzan's emails transmitting a validity report to litigation funders likely include statements related to the same. Apple should be allowed to see what he said to be able to question Mr. Boshernitzan fully at trial about the validity of the Asserted Patent, to allow the jury to assess his

credibility.

Caselaw. Finally, Haptic fails to distinguish the multiple cases cited by Apple ordering parties to produce similar material in other cases, and also provides no authority explaining why the documents logged by Haptic are not relevant.

In distinguishing the cases cited by Apple (at 15–16), Haptic points only to differences without distinction. For example, Haptic attempts to distinguish *Intel Corp. v. Protection Cap. LLC* based on the specific mechanism the parties have used to invest in litigation. These differences are immaterial. Just as is (presumably) the case here, the investment made by the banks in *Intel* was predicated on a return of that investment through litigation. *See, e.g.*, 2013 WL 12313348, at *6 (S.D. Cal. Oct. 2, 2013) (noting that the investment depended on the litigation for a return). Similarly, Haptic attempts to distinguish *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) by arguing that all of the documents the Court ordered produced in that case were shared before a confidentiality agreement—but fails to explain how this has anything to do with ***relevance***. Moreover, simply because the District of Delaware decided to adopt the Special Master's decision—which contained a lengthy analysis as to why the documents were relevant (*see* Ex. G)—does not mean that this Court can discount his careful analysis—as Haptic suggests. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2694191, at *2 (N.D. Cal. June 21, 2017) (reciting standard for reviewing non-dispositive rulings of a magistrate judge); *see also In re Cathode Ray Tube Antitrust Litig.*, 2022 WL 20611260, at *1 (N.D. Cal. Oct. 14, 2022) (same in context of special master). Similarly, just because the court clarified in later cases that "*Acceleration Bay* does not hold (as no case should) that [litigation funding materials] are always relevant without any consideration of additional factors" does not discount the decision to order production of such materials where they are relevant, as they are here. *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3129269, at *1–*2 (D. Del. June 12, 2020) (emphasis added).

As to the authority cited by Haptic, nothing stands for the proposition that litigation funding materials can never be relevant. To the contrary, each involved analyses of the specific

arguments and issues at play in the respective cases, and each involved individualized determinations that litigation funding-related documents were not relevant under far different circumstances. For example, Haptic asserts that *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) and *Trs. of Purdue Univ. v. STMicroelectronics, Inc.*, 2023 WL 11917023, at *3 (W.D. Tex. Jan. 18, 2023) both hold that communications with potential litigation funders that did not result in an agreement are irrelevant. Neither case stands for that proposition. In *Cont'l Cirs.*, Intel sought to learn only the identity of the potential litigation funders—not the information the plaintiff shared with them. 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020). Apple is not seeking the ***identity*** of the funders who declined to fund this case, but rather ***what Haptic said*** to potential funders or Siltstone—something entirely different and significantly more relevant. As to *Trs. of Purdue Univ.*, STMicroelecronics sought communications between the plaintiff and "an entity offering significant legal services that go beyond merely litigation funding." 2023 WL 11917023, at *3. Here, though, there is no indication of a similar relationship and, indeed, Haptic's own litigation funder confirmed it does little more than act as a bank. *See, e.g.*, 4:25-mc-0331, Dkt. No. 1 (S.D. Tex. Feb. 24, 2025) ("Siltstone Motion") at 12–13.[2]

Finally, Haptic makes numerous theoretical policy-based arguments arguing for a broad rule that ***all*** information concerning litigation funding is not relevant. These arguments should be rejected. The dispute before this Court is whether Haptic withheld specific documents—not whether a special exemption that does not exist should be written into the Federal Rules. Yet for most of its brief, Haptic raises straw men based on theoretical facts that differ from the specific facts at issue here. For example, Haptic's own litigation funder ***in this case*** claims that it merely

---

[2] Haptic also cites and relies (at 9) on *GoTV Streaming, LLC v. Netflix, Inc.*, 2023 WL 4237609, at *14 (C.D. Cal. May 24, 2023). This decision, though, was simply the result of a failure of a party to adequately brief issues. Indeed, the Court noted that—as to the only arguments the party seriously made—the information had already been turned over, mooting the motion. *Id.* Similarly, *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (D. Del. May 1, 2017), was a decision on motions *in limine* to exclude certain litigation funding materials from being introduced at trial. Indeed, this case suggests—contrary to Haptic's assertion—that the litigation funding materials were sufficiently relevant to be produced during discovery even if they didn't meet the later higher threshold for trial.

acts as a bank. *See, e.g.*, Siltstone Motion at 12–13 (Siltstone, claiming that its "*only* connection to the Haptic Action is that SCLF is providing litigation funding to Haptic…"). Yet Haptic argues that litigation funders should be treated differently than other third parties, such as ***banks*** (i.e., what Siltstone considers itself in this case) because it says "Litigation funders . . . specialize in evaluating the risks and potential litigation and ***often become a part of a litigation team***." *See* Opp. at 5–6 (emphasis added). And Haptic's claims that litigation funding is universally lauded are unsubstantiated, at best.[3]

As evidenced by Apple's opening brief (Dkt. No. 164 ("Mot.")), there is ample authority finding litigation financing information in patent cases to be discoverable. *See, e.g.*, Mot. at 4–7, 16–20; *see also Pres. Techs. v. MindGeek USA*, 2020 WL 10965161, at *6 (C.D. Cal. Dec. 18, 2020) (discovery of litigation-finance information allowed because of the "unique standing requirements and the potential for funding agreements to shed light on patents' value"); *Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, at *4-5 (S.D. Cal. Aug. 12, 2020) ("courts have generally ruled that litigation funding agreements and related documents are relevant and discoverable in patent litigation"). On the other hand, the cases Haptic cites in support of a purported "majority view" involve claims and defenses far afield from those here. For example, Haptic cites *Fulton v. Foley* (at 6) for the proposition that "litigation funding information is generally irrelevant," but omits that the case involved allegations that the plaintiff "was wrongfully arrested and convicted of a sexual assault and murder that he did not commit." 2019 WL 6609298, at *1 (N.D. Ill. Dec. 5, 2019).[4] That, in cases involving different facts, litigation

---

[3] *See, e.g.*, Paul Taylor, Third-Party Financing Puts Fiduciary Duty to Investors over Duty of Loyalty to Clients, 17 Landslide 20 (2025) (noting that "While third-party litigation financing is framed as a way for Davids to fight Goliaths, the reality appears to be that litigation financing is frequently a means for Goliaths to use--or even create--Davids as a shield to hide behind."); Jonathan Stroud, Patent Assertion Finance Is Big Business but No One Knows Who Profits, 15 Landslide 34, 36 (2023) (noting that a "troubling lack of disclosure" regarding litigation funding has led to a "shadow market . . . for legal claims with almost no public (or even private) insight or oversight into who is funding litigation…").

[4] *See also, e.g.*, *Design with Friends, Inc. v. Target Corp.*, 2024 WL 4333114, at *1 (D. Del. Sept. 27, 2024) (cited by Haptic at 6) (claims for "copyright infringement and breach of

funding information was found not relevant is neither relevant to this case with different facts, nor is it support for the broad rule Haptic urges this Court to adopt.

**2. Privilege: Haptic Fails Meet Its Burden of Proving that the Documents It Withheld Are Privileged.**

Haptic has also failed to substantiate its claim that the documents listed on its privilege log were properly withheld.[5]

Work Product. Apple's opening brief examined and analyzed the specific claims of privilege made by Haptic in its privilege log, arguing that Haptic had not, and could not, show that the documents listed were work product. Mot. at 7–12. Rather than address these arguments, Haptic fails to address the specific items on its privilege log at all—other than to complain about Apple's privilege log allegedly containing similar deficiencies. *See* Opp. at 17–20.

In the only discussion that even touches on the documents listed in its privilege log, Haptic argues that "[m]ost if not all of the substantive analyses shared with Haptic's litigation funders were prepared in the first instance by Haptic's counsel . . . for the purpose of assessing anticipated litigation against Apple." Opp. at 18. This statement adds little, if anything, to the already-ambiguous descriptions in Haptic's privilege logs, which (as explained in Apple's opening brief) are insufficient to support Haptic's claims that the listed documents are work product. *See* Mot. at 7–12. Indeed, it is unclear whether this statement is even referring to the same analyses listed in

contract"); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig*., 405 F. Supp. 3d 612 (D.N.J. 2019) (cited by Haptic at 7) ("this Multidistrict Litigation ("MDL") concerns various FDA and voluntary recalls of contaminated valsartan, a generic prescription medication indicated in the treatment of high blood pressure and other condition"); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019) (cited by Haptic at 7) (claims arising under the Sherman Act).

[5] Haptic raises issues with Apple's privilege log for the first time its brief. As Haptic acknowledges, Apple's log is not relevant to litigation funding and thus not at issue here. In any event, Haptic's concerns are unfounded. Out of Apple's production of over 11,000 documents, 74 of the documents on Apple's privilege log were withheld because they relate to legal advice regarding patent prosecution; the remaining 52 documents were produced with targeted redactions of the privileged content—meaning Haptic has substantial context for understanding the document from the surrounding content. To the extent Haptic contends that it needs additional information to understand Apple's log, Apple is willing to confer with Haptic to resolve these issues.

the privilege log. In any event, Haptic cites nothing—not even an attorney declaration—in support of this unsworn attorney argument, so it should be given little weight.

The rest of Haptic's argument dives into a lengthy theoretical discussion that should have no bearing to the Court's resolution of the specific dispute before it. For example, Haptic urges this Court (at 17) to adopt a broad rule that ***anything*** shared with a litigation funder is categorically privileged based on policy considerations. Haptic does not explain why this Court should engage in policy-making designed to promote and encourage litigation funding—especially where it is unclear (at best) that this Court should put its thumb on the scale in favor of the disputed view that litigation funding benefits (rather than hurts) the U.S. legal system.[6] These policy decisions are best left for policymakers. In any event, Haptic's fear-mongering that a ruling in Apple's favor would undermine a plaintiff's ability to obtain funding to pursue cases is unfounded.

Haptic also engages in a lengthy discussion of purported differences between the Ninth Circuit's test for work product as compared to the test used by other circuits under the mistaken impression that Apple used the wrong test in its opening motion.[7] Apple did not apply the wrong test. Indeed, Apple cited and discussed this Court's previous analysis (under the correct test) of similar issues that arose in the *Waymo* litigation as well as ample Ninth Circuit authority. *See, e.g.*, Mot. at 9–13 (citing and discussing cases from, for example, Oregon and California—which are both in the Ninth Circuit—as well as *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011), all of which state the proper test).

Finally, Haptic urges that, under the Ninth Circuit test, any document created for the purpose of obtaining litigation funding is necessarily privileged because it was created "because

[6] *See, e.g.*, the articles discussed in note 3, *supra*.

[7] Though irrelevant to the present dispute because Apple ***did*** base its arguments on the correct test, Haptic is simply wrong to suggest that the Ninth Circuit is unique in applying the "because of" test it describes. Indeed, the "because of" test is the prevalent test across nearly all circuits to determine whether so-called "dual-purpose" documents. *See, e.g.*, *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992); *Biegas v. Quickway Carrier, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009).

of" anticipated litigation. This position is unsupportable for several reasons.

First, it ignores the specific claims of privilege Haptic has advanced in its privilege log. Contrary to Haptic's argument, the Ninth Circuit has not held that any document that would not exist but-for anticipated litigation is automatically work-product. Rather, courts should consider "the totality of the circumstances" surrounding the creation of a document and "afford[] protection when it can fairly be said that the document was created because of anticipated litigation, ***and would not have been created in substantially similar form but for the prospect of that litigation.***" *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004). In other words, "[w]here a document is not prepared exclusively for litigation—meaning it has a 'dual purpose'—it is protected by work-product privilege only if it would not have been created in substantially similar form but for the prospect of litigation." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 909 (N.D. Cal. 2023).

With regard to the specific claims of privilege here, Haptic has not even substantiated a claim that these documents are "dual-purpose" documents such that the "because of test" should even apply. As discussed in Apple's opening brief, these documents appear to have been created for the sole purpose of obtaining funding for a business—a purely commercial activity. Mot. at 8–12.

Even if Haptic is correct that these are "dual-purpose" documents—a claim which Haptic has completely failed to substantiate—Haptic has not shown that these documents "would have been created in substantially similar form but for the prospect" of Haptic's litigation against Apple. *In re Facebook*, 655 F. Supp. 3d at 909. Indeed, the facts here suggest they would not. Haptic apparently engaged a damages and valuation expert ***whom it admits it had no intention of using to provide testimony in this case*** to evaluate the value Haptic could extract from Apple in this case shortly before reaching out to various litigation funders. *E.g.*, Opp. at 9. Similarly, Haptic acknowledges that the experts it engaged to conduct its validity analyses are not the same as the experts that it engaged to provide testimony in this case. *E.g.*, *id.* at 10. In other words, these documents were not created "because of" this litigation—but rather because Haptic needed

money to pursue its commercial goals.

As to Haptic's broader claim that all litigation funding material is privileged, the rule urged by Haptic would unjustifiably grant special privileges to non-practicing entities whose only business is litigation not otherwise available to practicing companies who engage in business besides litigation. Consider, for example, a company who actually creates and sells products but wants to raise money to continue its business operations. Actual and potential investors in such a company may want to engage in due diligence concerning that company's intellectual property assets to decide whether to invest. As is relatively uncontroversial, statements made by the company and valuations and evaluations commissioned by that company of its intellectual property to entice potential investors would be subject to the ordinary rules of discovery, even if that company had been contemplating (for example) a lawsuit against a competitor as part of its continued business operations. Yet, according to Haptic, any similar activity engaged in by a non-practicing entity (NPE) would automatically be exempt from discovery simply because an NPE's only business operations are litigation. There is no reason to give special privileges to NPEs, just as there is no reason to create special rules for litigation funding documents. Haptic's claims to the contrary should be rejected.

Waiver. As discussed above, Haptic has not substantiated, and cannot substantiate, its claim that the documents listed in its privilege log were work product to begin with—which resolves the privilege dispute entirely. *See also* Mot. at 7–15. This Court therefore need not consider whether Haptic's decision to share these documents with adverse business entities constitutes a waiver of that privilege. But if the documents listed on Haptic's privilege log were privileged to begin with (they were not), Apple's opening brief raised several questions about the facts, terms, and implications of Haptic's purported non-disclosure agreements with litigation funders that it seeks refuge in. *Id.* at 14–15.

Tellingly, Haptic refuses to answer any of those questions. Haptic's opposition is silent as to what the full terms of those agreements are and how they specifically "ensur[e] that [the] litigation funders would not allow any potential adversary [] to obtain those documents."

Opp. at 22; *see also id*., Ex. A (Boshernitzan Decl.) ¶¶ 11–16 (making the same generic statement). As Apple previously noted, Haptic has refused to produce these agreements despite Apple's request and their clear relevance to this motion practice. Mot. at 15 (citing Ex. F). Moreover, even though Haptic appears to be withholding them, the agreements are inexplicably absent from Haptic's privilege logs, presumably since they are not privileged. Put simply, Haptic makes no effort to substantiate the key aspect of its argument with any facts (other than its counsel's word and a vague description in a declaration). This is insufficient to rebut Apple's arguments that Haptic's work product protection (if any) was waived here. *See* Mot. at 12–15.

In the alternative, Haptic makes, for the first time, a claim that neither Haptic nor its litigation funder Siltstone has ever made before: that a "common-interest agreement" exists. Opp. at 22; *compare id. with* Siltstone Motion at 19–24. Again, Haptic offers no details of what these agreements are, how (and if) they are different from its non-disclosure agreements, and what the purported common legal interest is, or the date common interest attaches. Instead, Haptic claims that both Haptic and its litigation funder have a "common legal interest with respect to the outcome of this litigation." Opp. at 23 (relying on *Devon It, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012))[8]. Again, this is not (and cannot be) a ***legal*** interest, first because it is a ***business interest***, and second because Haptic and Siltstone were sitting on opposite sides of a negotiation table, adversely negotiating the terms of an agreement (and whether to fund the litigation against Apple at all). *See* Mot. at 13–14 (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007)); *see also Waymo*, 2017 WL 2694191, at *9–*10.

### B. Haptic Should Produce or Log the Remaining Responsive Documents It Is Withholding.

Based on how Haptic has interpreted relevance and privilege thus far in the dispute, Haptic

[8] Haptic's reliance on *Devon It* is also misplaced given that the analysis is solely centered around work product created after a funding agreement was made. *Devon It,* 2012 WL 4748160, at *1 n.1. This is not the case here, where Haptic has admittedly shared information well before a funding agreement was ever made with Siltstone (and, in many cases, with entities it never purportedly entered into a funding agreement with).

has withheld other documents that should have been produced in this case.[9] These documents should also be produced or logged, and (at least) include the following categories that are relevant to claims and defenses in this case.

Prior Art Identified in Haptic's Validity Report. As noted above, Haptic acknowledges that it prepared a report of the validity of the Asserted Patent and state of the art. In addition to withholding the report itself, it appears that Haptic withheld, without justification, the prior art identified in the report. Prior art is unquestionably relevant to the validity of the Asserted Patent, it is responsive to Apple's RFP No. 7 and ROG No. 5, and it is public and therefore not privileged. *See Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, 2011 WL 1599646, at *2–*3 (N.D. Cal. Apr. 27, 2011) (finding a party's knowledge of prior art discoverable even when that knowledge was learned through a privileged communication).

Trial Themes. Haptic does not dispute that Apple is entitled to seek discovery to rebut Haptic's trial themes. Opp. at 11. Nor does it state that it does not intend to put forth a "David v. Goliath" argument at trial. *Id.* Indeed, Haptic could have ended this question entirely with a simple promise, but it did not. Haptic has certainly left the door open to attempting to win the jury's sympathies by comparing its size against Apple. Evidence that Haptic is in fact backed by sophisticated litigation finance companies will reduce confusion and help the jury understand the true stature of the parties.

In any event, while Apple is aware of the identity of one of Haptic's litigation funders (Siltstone), it is unclear whether others exist. To the extent there are more, the identities of ***all*** Haptic's litigation funders are relevant, discoverable, and necessary to rebut Haptic's trial themes. *See, e.g.*, *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822, at *7 (W.D.N.C. July 24, 2023) (finding existence of funding agreements and identities of litigation funding entities relevant to rebut trial themes).

Credibility and Bias. Apple's opening brief demonstrated that discovery into

[9] As Apple understood, the Court allowed Apple to fully brief the issues identified by Apple in the March 25, 2025 Joint Discovery Statement (Dkt. 154).

communications between Haptic and/or Mr. Boshernitzan and its litigation funders (including Siltstone) are relevant to the credibility of testimony given by Mr. Boshernitzan. Mot. at 18. In response, Haptic solely asserts that Mr. Boshernitzan made no statements about the value of the Asserted Patent to any litigation funder. Opp. at 12. As explained above, Haptic's tortured view of what a "damages analysis" is and whether it relates to the value of the Asserted Patent is wrong. *Supra* Section § II.A.1. Haptic also ignores any other relevant statements made to litigation funders about the Asserted Patent, such as Mr. Boshernitzan's thoughts (or the thoughts of any other Haptic employee who participated in discussions) on the state of the art and/or purported validity of the Asserted Patent or the merits of Haptic's case (*see, e.g.*, Haptic Suppl. Priv. Log (Dkt. No. 169-3) Nos. 1–9). These statements are plainly discoverable as impeachment material for trial, as another court in this District very recently found. *See, e.g.*, *Correct Transmission, LLC v. Juniper Networks Inc.*, No. 21-cv-09284-RFL (SK), Dkt. No. 257 (N.D. Cal. Apr. 29, 2025) (finding that a litigation funding agreement was not work product and "relevant to the bias" of two witnesses).

Haptic's reliance on *Benitez* is misplaced. First, that case is factually inapposite as it is not a patent case; it is a case about an alleged "malicious prosecution, unconstitutionally-obtained conviction for robbery, and [a] six-year imprisonment" by an individual against the New York City Police Department. *See Benitez v. Lopez*, 2017 WL 11526431 (Amended Complaint), at 1 (E.D.N.Y. Oct. 13, 2017). Second, the *Benitez* court's ruling was limited to whether the "financial backing of a litigation funder" was relevant to credibility. 2019 WL 157817, at *1 (E.D.N.Y. Mar. 14, 2019). Here, Apple seeks discovery into whether Mr. Boshernitzan's statements regarding the Asserted Patent are contradictory to the positions Haptic has taken in this litigation.

<u>The Litigation Funding Agreement</u>. Haptic has not produced, nor logged, the litigation funding agreement it entered into with Siltstone. As multiple courts have found, the litigation funding agreement is relevant in patent litigation cases because it shows valuation of the patents-in-suit. *See* Mot. at 17.

## III. CONCLUSION

For these reasons, Apple requests that the Court order Haptic to produce the documents listed on its privilege log and to produce or log all other relevant documents withheld under the guise of "litigation funding." Apple also asks the Court to grant any other relief deemed appropriate.

Dated: May 1, 2025

Respectfully submitted,

By: */s/ Joy B. Kete*

Roger A. Denning (SBN 228998)
denning@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Jeff H. Burton (SBN 328305)
jburton@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Katherine D. Prescott (SBN 215496)
prescott@fr.com
Jeanel N. Sunga (SBN 333815)
sunga@fr.com
Claire Chang (SBN 341420)
cchang@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: 650-893-5070 / Fax: 650-839-5071

Qiuyi Wu (Admitted *pro hac vice*)
qwu@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: 516-542-5070 / Fax 617-542-8906

Joshua H. Park (Admitted *pro hac vice*)
jpark@fr.com
FISH & RICHARDSON P.C.
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: 713-654-5335 / Fax: 713-652-0109

*Attorneys for Defendant APPLE INC.*